PASQUOTANK DRAINAGE DISTRICT, No. 1, v. W. L. CAHOON, A. F. STAFFORD, E. C. BRITE, CADER RIGGS AND WILLIAM GRIFFIN.

(Filed 9 March, 1927.)

1. **Drainage Districts — Assessments — Benefits — Enlarging Districts— Judgments—Res Judicata.**

When under the provisions of C. S., 5320 a drainage district has been formed within certain boundaries with the assessments of the lands of the owners therein regularly made in accordance with the benefits to be acquired, and the matter proceeds to final judgment as the statute prescribes, excluding the *locus in quo* from the assessment rolls, the question of benefits is *res judicata,* and a supplementary petition to enlarge the boundaries of the established district so as to include contiguous lands and to subject them to assessment for benefits received may not be entertained, and a demurrer *ore tenus* and a motion to dismiss the petition for want of authority will be sustained. 3 C. S., 5373(a).

2. **Same—Interpretation of Statutes.**

While statutes establishing drainage districts are to be liberally construed (C. S., 5379) and many corrections necessarily made as the work

progresses, and the proceedings subject to the filing of supplementary petitions, bringing the proceedings forward by interlocutory orders upon notice, etc., this does not extend to the final judgment determining the question of assessments of owners of land as to benefits received, or to permit the enlargement of the district to take in the owners of adjoining lands.

APPEAL by petitioner, or plaintiff, from *Daniels, J.,* at January Term, 1927, of PASQUOTANK. Affirmed.

*Aydlett & Simpson for plaintiff, petitioner.*
*Ehringhaus & Hall for defendants, respondents.*

CLARKSON, J. A petition was duly filed under chapter 442, Public Laws 1909, and amendments thereto, Public Laws 1911, ch. 67, etc., and especially by virtue of that certain amendment, chapter 76, Public Laws 1921, to establish a drainage district in Pasquotank County, N. C., 2 and 3 C. S., ch. 94. The petition described the boundaries of the land, excluding the land now in controversy. The petitioner alleged that the drainage district would afford a much needed and adequate public highway; that the lands within the district will be greatly improved and the public health greatly conserved. The canal to be approximately seven miles in length from the eastern edge of the Dismal Swamp to its mouth in Pasquotank River.

The proceedings seem to be carefully prepared and in accordance with the statute: (1) Bond for cost given; (2) Summons; the respondents in this summons numbering more than 100, include the petitioner and respondents in the present proceedings; (3) Order appointing viewers; (4) Preliminary report of the board of viewers; (5) Order fixing date of hearing upon preliminary report of viewers; (6) Affidavits of posting and printing notices of hearing of preliminary report; (7) Order of clerk on hearing of preliminary report establishing drainage district; (8) Final report of engineer and viewers. This detail report, complete in every respect, giving location of district, area of district 7,146.4 acres, classification of lands, estimated cost of land per acre in each class; (9) Affidavits of posting and printing notices of hearing of final report; (10) adjudication of the final report. "The Court finds that the benefits which will accrue to the lands to be affected by the proposed drainage will far exceed the cost of construction of the proposed canal, and the Court hereby and in all respects confirms the report of the board of viewers," etc.

The classification of the land in the drainage district includes certain lands belonging to the respondents, or defendants, in the present cause, *but excludes the land which is now sought to be included in and made a*

*part of the. drainage district,* and which land lies "immediately contiguous to the lands included in said drainage district, and division line running through respondent's tracts."

In the original cause, the elections for drainage commissioners were regularly and properly held and commissioners elected, duly qualified as provided by law. The assessment roll for drainage assessments were regularly and properly prepared and certain lands belonging to the respondents in the present cause were included in said assessment roll, *but the lands of respondents now sought to be included in said drainage district were excluded from said assessment roll.*

The adjudication of the final report was dated 22 November, 1921. An order was made 5 September, 1925, all parties being represented before the court, that the board of commissioners of the said drainage district be allowed to amend their assessment roll to meet certain indebtedness, there being a deficit. The additional assessment roll was duly allowed, including certain of the lands belonging to the respondents, or defendants, in this cause, *but excluded the lands of respondents now sought to be included in said drainage district.*

The plaintiff, or petitioner, filed a petition in the Pasquotank Drainage District No. 1, the original cause, and alleged that respondents', or defendants' lands, about 400 acres, are greatly benefited by reason of the drainage and that said lands (describing same) be taken in the district. "That the boundaries of said drainage district be enlarged so as to include the lands set out above, and that the viewers may be sent upon said lands to classify the same, and to assess the same for the prorata part of the expense and for such other and further relief as may seem just and proper to the court."

Defendants, respondents, moved "to dismiss the said petition and demurred *ore tenus* to the same, for that this court is without jurisdiction to hear the same, and for that there is no authority in the statutes of North Carolina for such proceeding, and for that the parties to this petition and respondents and said drainage district itself are concluded by the judgment heretofore rendered in this proceeding, and to which reference is made in said petition, and for that on its face this petition seeks to reopen the amount of assessment against said respondents and also the question of what lands are benefited by the drainage therein contemplated and provided for, both of which matters are concluded by the previous judgments and orders in said cause, and that said questions cannot be here and now further inquired into, and for that this court is without jurisdiction to hear any of the matters averred in said petition."

The court below sustained the demurrer from which plaintiff appealed. We think the court below correct in its decision.

Plaintiff, the petitioner, contends that the sole question: Under the drainage law after a drainage district has been established, commissioners appointed and the ditches dug, can the commissioners in the proceeding *file a supplemental petition* and maintain the same to extend the boundaries of the district so as to include about four hundred acres more land which are benefited by the drainage district, and which now drain into the canals cut by the district, or is the final judgment establishing the district *res judicata* and conclusive of the rights of the parties for all time?

C. S., 5320, is as follows: "The board of viewers shall proceed to examine the land described in the petition, and other land if necessary to locate properly such improvement or improvements as are petitioned for, along the route described in the petition, or any other route answering the same purpose if found more practicable or feasible, and may make surveys as may be necessary to determine the boundaries and elevation of the several parts of the district, and shall make and return to the clerk of the Superior Court within thirty days, unless the time shall be extended by the court, a written report, which shall set forth: 1. Whether the proposed drainage is practicable or not.  2. Whether it will benefit the public health or any public highway or be conducive to the general welfare of the community.  3. Whether the improvement proposed will benefit the lands sought to be benefited.  4. Whether or not all the lands that are benefited are included in the proposed drainage district.  They shall also file with this report a map of the proposed drainage district, showing the location of the ditch or ditches or other improvement to be constructed and the lands that will be affected thereby, and such other information as they may have collected that will tend to show the correctness of their findings."

The viewers, under section 4, *supra,* must see to it that "all the lands that are benefited are included in the proposed drainage district." In the present case the land sought to be brought in the drainage district, the question of benefits was adjudicated in the original cause and the land excluded.

The Drainage Act has been materially amended to make a more perfect law to meet different situations since chapter 442, Public Laws 1909, when the first comprehensive system was invoked for the State. See Public Laws 1923, ch. 217 and 231. The latter chapter makes certain provision for *maintenance and improvement,* and provides that the board of drainage commissioners file petition, etc.  3 C. S., part sec. 5373(a): "Setting forth the facts that the canals in their districts are not sufficient to afford proper drainage, and that, in the opinion of the board, the said canals need to be recleaned, widened, deepened, or lengthened, or that additional canals should be cut in certain places," etc.

DRAINAGE DISTRICT *v.* CAHOON.

In *Staton v. Staton,* 148 N. C., àt p. 491, the following is held: "This is in effect a motion in the cause. From the nature of the proceeding, the judgment in 1886 is not a final judgment, conclusive of the rights of the parties for all time, as in a litigated matter. But it is a proceeding *in rem,* which can be brought forward from time to time, upon notice to all the parties to be affected, for orders in the cause, dividing (as here sought) the amount to be paid by each of the new tracts into which a former tract has been divided by partition or by sale; to amend the assessments, when for any cause the amount previously assessed should be increased or diminished, for repairs; for enlarging and deepening the canal or for other purposes, or to extend the canal and bring in other parties. It is a flexible proceeding, and to be modified and moulded by decrees from time to time to promote the objects of the proceeding. The whole matter remains in the control of the court. It is not necessary, however, to keep such cases on the docket, but they can be brought forward from time to time, upon notice to the parties, upon supplementary petition filed therein, and further decrees made to conform to the exigencies and changes which may arise." *Forehand v. Taylor,* 155 N. C., 355; *Newby v. Drainage District,* 163 N. C., 24; *Shelton v. White,* 163 N. C., 90; *In re Lyon Swamp,* 175 N. C., 270; see *Banks v. Lane,* 170 N. C., p. 14.

*In re Lyon Swamp Drainage District, supra,* it is said, at p. 272: "Subsequent events, such as the silting up of a canal, or washouts by reason of torrential rains, or other causes, may cause a necessity for some changes in the plans originally adopted, or experience may point out unforeseen defects, and for this and other causes the corporate body itself can make proper changes in its plans, or they can be ordered upon supplementary petition before the clerk, subject, however, *in both cases to the rule that there can be no radical change made in the plan marked out in the original proceedings, or any that will be a detriment to the rights of the bondholders or to the other proprietors within said district."* (Italics ours.)

In examining the authorities elsewhere, we find *Squaw Creek Drainage District v. Turney,* 235 Missouri, p. 80, it is there held that under the Act of 1905, providing that any drainage district organized under article 3 of the drainage law *"may be enlarged and the boundaries extended so as to include other lands contiguous thereto,"* a drainage district may be enlarged to include lands not heretofore embraced within its boundaries. Machinery is provided for notice, consideration of benefits, etc. The Court said, at p. 86: "Up to the time of the passage of the act approved 8 April, 1905, amending the provisions of article III, ch. 122, of the Revised Statutes then in force relating to swamp and

overflowed lands, there seems to have been no way by which they could enlarge the territorial scope of their undertaking."

This case was cited and approved in *Cole et al. v. Norborne, Land Drainage District,* 270 U. S., p. 45 (46 Supreme Court Reporter, p. 196), a case likewise from Missouri: "The grounds on which relief is sought are that section 40 of the drainage laws of 1913 (Laws 1913, p. 254), under which the plaintiff's lands were brought into the drainage district, is contrary to the Fourteenth Amendment, and that the inclusion of their lands was an arbitrary exercise of power for the purpose of making the plaintiffs pay for benefits they did not share." The U. S. Court held: "Under the laws of the State a drainage district was incorporated which originally contained; it is said, 14,400 acres. In a later year, upon petition of the supervisors of the district, the boundaries were enlarged in due statutory form so as to take in nearly 24,000 acres more of adjoining land, including that now concerned. It is not disputed that the original district was lawful in all respects. In general there can be no doubt that a State has power to add more land that shares the benefit of a scheme, to the lawfully constituted district that has to pay for it, and to do so against the will of the owners. *Houch v. Little River Drainage District,* 239 U. S., 254; 262, 36 S. Ct., 58, 60 L. Ed., 266; *Squaw Creek Drainage District v. Turney,* 235 Mo., 80, 138 S. W., 12; *Mudd v. St. Francis Drainage District,* 117 Ark., 30, 173 S. W., 825; *Faithorn v. Thompson,* 242 Ill., 508, 90 N. E., 303."

Under the facts and circumstances of this case we can find no authority under the decisions of this State construing the Drainage Statutes giving any right to plaintiff to sustain this action. In the *Squaw Creek Drainage District case, supra,* the act was passed to meet certain conditions relative to contiguous lands. In that case it was contended that "The decree of the court excluding defendant's said land from the original proceedings for the incorporation of said drainage district was not *res adjudicata,* and was and is no bar to this proceeding. No topographical survey had at that time been made. No scheme or plan of drainage had been formulated or adopted and no work or improvement had been commenced or completed and no lands had been benefited or improved." In the present case the questions of benefits were adjudicated and the statute so required. Whether, under our Constitution and the principle of vested rights, a retroactive act could be passed, is not before us.

In *O'Neal v. Mann, ante,* 153, controversy involving the validity of chapter 611, Public Laws 1925, entitled "An act excluding certain lands from Mattamuskeet Drainage District," this Court, *Justice Connor,* writing an able opinion founded on fundamental principles, held the act invalid. As bearing on the present controversy, the opinion

says: "Lands embraced in the boundaries of a proposed district, whose owners are unwilling to join in the petition, or who oppose the establishment of the district, may be included therein only upon a finding by the court that such lands will be benefited by the drainage resulting from the establishment and organization of the district; the court has the power to include such lands in the district, and to assess them for their porportionate share of the expense, only because of the benefits which they will receive."

In the original cause this very question was decided that the land sought here to be taken in was not benefited. It is provided, C. S., 5379, that the Drainage Act "shall be liberally construed to promote the leveeing, ditching, draining, and reclamation of wet and overflowed lands." . . . The remedies provided for in the act "shall exclude all other remedies."

The drainage acts of the State have been of great service in the creation of wealth and the promotion of health. Perhaps no legislation has been of more value in certain sections of the State to increase the productiveness of lands, and thus crop values, and the health of the citizens, than these drainage acts. The acts are well within the police power of the State. The drainage of wet lands not only promote public health, welfare and render the land fit for habitation and use, but the lands are made more productive and the crop values materially increased.

So, important acts for the benefit of health and the production of wealth should be liberally construed, but in so doing, we should not forget certain well-founded governmental principles that no land can be taken without being benefited. In the original controversy it was found as a fact that the land was not benefited, and therefore excluded. There is no legislative enactment allowing a proceeding of this kind to be reopened to determine the question.

From a careful consideration, the judgment below is

Affirmed.