ALEX B. DRYSDALE, J. D. DUFF AND YATES W. LITTLE, AS THE BOARD OF DRUID HILLS SANITARY DISTRICT, v. PAUL P. PRUDDEN, HARRY L. HUTCHISON, ALBERT C. MITTENDORF, HOWARD A. EMIG, EDWARD A. DAHLY, RALPH M. WINTERS AND PARKER CAMPBELL, COPARTNERS, DOING BUSINESS UNDER FIRM NAME AND STYLE OF PRUDDEN AND COMPANY. .

(Filed 6 June, 1928.)

**1. Sanitary Districts—Creation—Special Act Creating Sanitary District Unconstitutional—Health.**

An act of the Legislature attempting to create a sanitary district within certain lines within a county for the construction and maintenance of sewer and water systems with certain assessments or taxing powers for the purpose is void, being in violation of the provisions of Article II, sec. 29 of the Constitution of North Carolina, prohibiting the enactment of local, private, or special acts relating to "health, sanitation," etc.

**2. Same—General Act Creating Sanitary Districts Constitutional.**

Chapter 100, Public Laws 1927, under which sanitary districts may be created upon petition and approving vote of the residents therein, with further approval of the State Board of Health after a hearing both by the local authorities and by the State Board of Health, with power to issue bonds, *Held:* a general law of Statewide application relating to health, and valid.

**3. Same—Provision in General Act for Optional Exclusion of Industrial Village Does Not Affect Constitutionality.**

The validity of chapter 100, Public Laws 1927, relating to the formation of sanitary districts is not affected by the provisions that certain industrial enterprises and villages situate therein may be excluded upon application of the owners.

**4. Sanitary Districts—Bonds—Taxation.**

Bonds issued by a sanitary district formed in accordance with chapter 100, Public Laws 1927, are a valid obligation, and binding upon the property within the district as a general tax and not an assessment of property according to benefits received.

**5. Same—Property Benefited.**

Bonds issued by a sanitary district for sewerage and a water supply under the provision of chapter 100, Public Laws 1927, will not be declared invalid because not differentiating between property benefited and not benefited when the voters within the territory unanimously voted for their issuance, and having full notice and opportunity to do so, no one appeared to make objection on that ground.

**6. Constitutional Law—Police Power—Health.**

Statutes of general application relating to health, sanitation, etc., fall within the police powers of the State.

**7. Sanitary Districts—Bonds—Taxation—Public Necessity.**

Sewerage and water bonds issued by a sanitary district under chapter 100, Public Laws 1927, are for a public necessity, and valid.

*8.* Statutes—Construction—Presumption of Constitutionality.

> The courts will not declare a statute void as unconstitutional unless the violation of the Constitution is so manifest as to leave no room for a reasonable doubt.

APPEAL by defendants from *Schenck, J.,* at March Term, 1928, of HENDERSON. Affirmed.

This is a controversy without action. C. S., 626.

The following is the agreed statement of facts:

"1. The above named Alex B. Drysdale, J. D. Duff and Yates W. Little, hereinafter called the plaintiffs, are the members and constitute the board of Druid Hills Sanitary District, elected and qualified in accordance with the provisions of chapter 100, Public Laws 1927.

"2. The above named Paul P. Prudden, Harry L. Hutchison, Albert C. Mittendorf, Howard A. Emig, Edward A. Dahly, Ralph M. Winters, and Parker Campbell, hereinafter called the defendants, are copartners, engaged in the business of investment banking under the firm name of Prudden and Company.

"3. The Druid Hills Sanitary District was created pursuant to the provisions of a general act entitled, 'An act to enable the creation, government, maintenance and operation of sanitary districts and prescribing the powers of such districts,' ratified 4 March, 1927, constituting chapter 100, Public Laws 1927; and every requirement of the said general act for the creation of the said district and the issuance of the bonds hereinafter mentioned has been complied with, the said district having been created by a resolution of the Board of Health of the State of North Carolina, passed 23 August, 1927, which resolution contained a description by metes and bounds, of the territory comprising the district and an election upon the question of the issuance of the hereinafter described bonds having been duly held, all according to the requirements of the said general act, and in the election the vote was unanimous for the issuance of the hereinafter described bonds.

"That after the word 'included' in the second line of the proviso of section 5, chapter 100, Public Laws 1927, there are the words 'within or excluded' in the act as passed by the Legislature, but that these words 'within or excluded,' were omitted in the publication of the printed act, in the bound volume of the Public Laws 1927.

"4. The identical territory comprising the said Druid Hills Sanitary District was created or attempted to be created into a district called Druid Hills Sanitary and Maintenance District by a special act, ratified 7 March, 1927, entitled, 'An act to create in Henderson County a special sanitary and maintenance district to be known as the Druid Hills Sanitary and Maintenance District,' constituting chapter 229, Private Laws

1927. The governing board of the district appointed by the herein cited special act unanimously requested that the territory described in the special act be included in the territory comprising the district as created by resolution of the Board of Health of the State of North Carolina, passed 23 August, 1927.

"5. Acting pursuant to said general act, and disregarding said special act, the plaintiffs have taken proceedings for the issuance of bonds of Druid Hills Sanitary District in the aggregate principal amount of $75,000 for the purpose of acquiring, constructing, maintaining and operating a sewerage system and water supply system in and for said district, and have entered into a contract with the defendants, whereby the defendants have agreed to purchase said bonds at par and accrued interest, it being stipulated in said contract, however, that the defendants shall not be obligated to take up and pay for said bonds unless said bonds constitute the full and valid obligation of Druid Hills Sanitary District, and be payable from an unlimited *ad valorem* tax upon all taxable property of said district and not from special assessments.

"6. The plaintiffs contend that said bonds have been lawfully authorized and when issued will be the full and valid obligations of Druid Hills Sanitary District, payable from an unlimited *ad valorem* tax upon all taxable property of the said district and not from special assessments, and that the tax limit prescribed by chapter 229, Private Laws 1927, the special act, is not applicable to said bonds, for the following reasons:

"(a) Chapter 229, Private Laws 1927, is a local and private act relating to sanitation and health in violation of section 29, Article II, Constitution of North Carolina.

"(b) The tax authorized by section 10, chapter 229, Private Laws 1927, is in violation of section 3, Article V, and section 9, Article VII, Constitution of North Carolina, in that said tax is not to be levied uniformly upon all taxable property within the district.

"(c) Even if chapter 229, Private Laws 1927, is constitutional, it is inapplicable to Druid Hills Sanitary District, created under chapter 100, Public Laws 1927. The special act should not be construed to be inconsistent with or as repealing the said general act but should be held and construed to be cumulative thereto.

"(d) Chapter 100, Public Laws 1927, is in all respects constitutional and valid and authorized for the payment of bonds issued thereunder not special assessments, but an unlimited *ad valorem* tax upon all taxable property within the district created thereunder.

"7. The defendants contend that said bonds have not been lawfully authorized and that when issued will not be the full and valid obligations of Druid Hills Sanitary District payable from an unlimited *ad valorem* tax upon all taxable property of the said district and not from

special assessments, and that the tax limit prescribed by chapter 229, Private Laws 1927, the special act, is applicable to said bonds, for the following reasons:

"(a) Chapter 229, Private Laws 1927, is not a local and private law relating to sanitation and health in violation of section 29, Article II, Constitution of North Carolina.

"(b) The tax authorized by section 10, chapter 229, Private Laws 1927, is not in violation of section 3, Article V, and section 9, Article VII, Constitution of North Carolina. Said section 3 and section 9 apply only to an *ad valorem* tax levied by a district such as the Druid Hills Sanitary and Maintenance District.

"(c) Even if the tax authorized by section 10, chapter 229, Private Laws 1927, is not valid and constitutional as an *ad valorem* tax it may and should be upheld and given effect as a special assessment against real property benefited.

"(d) The enactment of chapter 229, Private Laws 1927, terminated the applicability of chapter 100, Public Laws 1927, to the territory created by chapter 229 into Druid Hills Sanitary and Maintenance District.

"(e) Even if Druid Hills Sanitary District is not a complete nullity, chapter 229, Private Laws 1927, is applicable to it and (1) the district has no power to issue bonds. (2) The district has no power to *construct* a sewer or water system. (3) The district has no power to levy an unlimited *ad valorem* tax.

"(f) Even if chapter 229, Private Laws 1927, is unconstitutional or inapplicable to Druid Hills Sanitary District, chapter 100, Public Laws 1927, is in conflict with section 17, Article I, Constitution of the State of North Carolina and the Fourteenth Amendment to the Constitution of the United States and therefore void because:

"(1) It affords to the property owners within the proposed district no hearing upon the question of benefits to their property before an agency having power to exclude from the district property which will not be benefited by the improvements to be constructed or acquired. (2) It authorizes the exclusion from the district of any industrial plant and its contiguous village upon application of the person or corporation owning or controlling the same without any hearing and determination that such industrial and contiguous village will not be benefited by the improvements to be acquired or constructed in the district.

"(g) Even if chapter 229, Private Laws 1927, is unconstitutional or inapplicable to Druid Hills Sanitary District, the tax authorized by section 17, chapter 100, Public Laws 1927, is invalid and unconstitutional. The General Assembly cannot delegate to a sanitary district, created for the limited purpose of making sanitary improvements within

the district, the unrestricted power to levy an unlimited *ad valorem* tax upon all taxable property within the district.

"8. The defendants have refused to accept delivery of said bonds, but if the plaintiffs are authorized to issue them, and they will constitute the full and valid obligations of Druid Hills Sanitary District, payable from an unlimited *ad valorem* tax upon all taxable property of said district and not from special assessments, then the defendants stand ready, willing and able to take up and pay for the same in accordance with their contract."

The judgment of the court below is as follows:

"It is considered, ordered and decreed by the court that the $75,000 of bonds of Druid Hills Sanitary District, mentioned in the agreed case, and issued for the purpose of acquiring, constructing, and maintaining and operating a sewerage system and water supply system in and for said district, and issued pursuant to the provisions of chapter 100, Public Laws of North Carolina, 1927, are the valid, legal and binding obligations of the said Druid Hills Sanitary District, and that the said bonds when issued and delivered are payable from an unlimited *ad valorem* tax upon all taxable property in said district, as provided for by section 17, chapter 100, Public Laws 1927. It is further ordered, adjudged and decreed, that the defendants be and they are hereby required to pay for the said bonds in accordance with the terms of sale and award, when delivered by the plaintiffs. It is further ordered, adjudged and decreed that the defendants shall pay the costs in this action to be taxed by the clerk of Superior Court of Henderson County."

*W. C. Meekins* for *plaintiffs.*
*C. N. Malone* for *defendants.*

CLARKSON, J. Although the agreed statement of facts is rather prolix, an analysis presents practically only two material questions:

*The first material question:* Is chapter 229, Private Laws 1927, a local, private or special act in violation of section 29, Article II, Constitution North Carolina, and therefore void? We think so.

Private Laws 1927, chap. 29, the caption is: "An act to create in Henderson County a *special sanitary* and maintenance district to be known as the Druid Hills Sanitary and Maintenance District."

Section 1 designates the particular locality or territory, by metes and bounds. Section 5, is as follows: "To negotiate and enter into agreement with the owners of existing water supplies, sewerage system, electric light and power service, street equipment, or other such utilities as may be necessary to carry into effect the intent of this act."

Section 6: "To repair and generally to maintain in good and satisfactory working condition a sewer system, to repair and maintain the system of electric lighting installed for the lighting of said streets; to improve and maintain and beautify the parks and spaces of ground within said district dedicated to public use; to make contracts for the proper execution of the powers herein conferred, and to do everything necessary and incident to the execution of the powers herein conferred and authorized, and to pay for the same out of the district funds."

Const. of N. C., Art. II, sec. 29, is as follows: "The General Assembly shall not pass any local, private, or special act or resolution, relating to the establishment of courts inferior to the Superior Court, relating to the appointment of justices of the peace; relating to health, sanitation, and the abatement of nuisances; changing the names of cities, towns and townships; authorizing the laying out, opening, altering, maintaining, or discontinuing of highways, streets or alleys; relating to ferries or bridges; relating to nonnavigable streams; relating to cemeteries; relating to the pay of jurors; erecting new townships, or changing township lines, or establishing or changing the lines of school districts; remitting fines, penalties, and forfeitures, or refunding moneys legally paid into the public treasury; regulating labor, trade, mining, or manufacturing; extending the time for the assessment or collection of taxes or otherwise relieving any collector of taxes from the due performance of his official duties or his sureties from liability; giving effect to informal wills and deeds; nor shall the General Assembly enact any such local, private or special act by the partial repeal of a general law, but the General Assembly may at any time repeal local, private or special laws enacted by it. Any local, private or special act or resolution passed in violation of the provisions of this section shall be void. The General Assembly shall have power to pass general laws regulating matters set out in this section."

We think *Day v. Comrs.,* 191 N. C., 780 decisive of the first proposition. At pp. 783-4, it is said: "The first section of the act before us commands the commissioners of Surry and Yadkin counties to construct one bridge across the Yadkin River at a place which is pointed out and particularly defined; it is direct legislation addressed to the accomplishment of a single designated purpose at a 'specific spot'; it is therefore a local and special act, and as such is expressly prohibited by Art. II, sec. 29, of the Constitution. In further elucidation of this provision the following additional cases may be consulted: *Trustees v. Trust Co.,* 181 N. C., 306; *Sechrist v. Comrs., ibid.,* 511; *Robinson v. Comrs.,* 182 N. C., 590; *Galloway v. Board of Education,* 184 N. C., 245."

*Reed v. Engineering Co.,* 188 N. C., p. 39, is distinguishable from the *Day case, supra.* In the *Reed case,* this Court sustained chapter 341,

Public-Local Laws 1923, entitled "An act to create sanitary districts in Buncombe County, and describing their purposes and powers," against the objection that it violated section 29, Art. II. In that case the *act applied generally to the entire county of Buncombe.* It was there said (at p. 44) : "Nor do we think the law is subject to the objection that it is local or special. A law which applies generally to a particular class of cases is not a local or special law. *Hymes v. Aydolott,* 26 Ind., 431; *Palmer v. Stumph,* 29 Ind., 329; 15 L. R. A., 508." *Davis v. Lenoir,* 178 N. C., 668.

It will be noted that the powers conferred by this local, private or special act in controversy, which we think void, are far more extensive than in the *Reed case, supra.*

*The second material question:* "Druid Hills Sanitary District was created pursuant to the provisions of a general act entitled 'An act to enable the creation, government, maintenance and operation of sanitary districts and prescribing the powers of such districts,' ratified 4 March, 1927, constituting chapter 100, Public Laws 1927; *and every require- ment of the said general act for the creation of the said district and the issuance of the bonds hereinafter mentioned has been complied with,"* etc. Is this act constitutional and the bonds valid? We think so.

The act seems to be carefully drawn. Section 1, is as follows: "For the purpose of preserving and promoting the public health and welfare the State Board of Health may, as hereinafter provided, create sanitary districts without regard for county, township or municipal lines: *Pro- vided, however,* that no municipal corporation or any part of the terri- tory in a municipal corporation shall be included in a sanitary district except at the request of the governing body of such municipal corpora- tion."

Fifty-one per cent or more of the resident freeholders within the pro- posed sanitary district may petition the board or boards of county com- missioners, in which the land is situate, setting forth the boundaries of the proposed district. Public hearing is had after notice. If approved by the board or boards of county commissioners, petition transmitted to State Board of Health, to hold public hearing after notice. If State Board of Health shall deem it advisable to comply with the request, district shall be created and established, declaring the territory within such boundaries to be a sanitary district.

Section 5. "If, after hearing, the State Board of Health shall deem it advisable to comply with the request of said petition and that a district for the purpose or purposes therein stated should be created and estab- lished, the State Board of Health shall adopt a resolution to that effect, *defining the boundaries of such district and declaring the territory within such boundaries to be a sanitary district:* (Italics ours) *Pro-*

*vided, however,* that any industrial plant and its contiguous village shall be (ex) included from the area embraced within such sanitary district as expressed in the application of the person, persons or corporation owning or controlling such industrial plant and its contiguous village, said application to be filed with the State Board of Health on or before the date of the public hearing as hereinbefore provided. Each district when created shall be identified by a name or number assigned by the State Board of Health."

Section 6. "The State Board of Health shall cause copies of the resolution adopted creating the sanitary district to be sent to the board or boards of county commissioners of the county or counties in which all or parts of the territory within the district is located," etc. Meeting several or joint of county commissioners for electing sanitary district board. Board composed of three members, to be governing body of district. Method of selection of members. Term of office. Election of future boards. Members to be residents of district. Date for qualification. Term of office. Vacancies.

Section 7. "When a sanitary district is organized as herein provided the sanitary district board selected under the provisions of this act shall be a body politic and corporate and as such may sue and be sued in matters relating to such sanitary district. In addition, such board shall have the following powers: (1) Under the supervision of the State Board of Health, to acquire, construct, maintain and operate a sewerage system, sewer disposal or treatment plant, water supply system, water purification or treatment plant or such other utilities as may be necessary for the preservation and promotion of the public health and sanitary welfare within the district. (2) To issue certificates of indebtedness against the district in the manner hereinafter provided. (3) To issue bonds of the district in the manner hereinafter provided. (4) *To cause taxes to be levied and collected upon all the taxable property within the district sufficient to meet the obligations evidenced by bonds and certificates of indebtedness issued against the district."* (Italics ours.)

Finally, the machinery for an election on the proposition of issuing bonds to provide funds for doing the work as set forth in the resolution adopted by sanitary board.

In the present case it is stated that every requirement of the act was complied with and in the election the vote was unanimous for the issuance of the bonds. The responsibility was a dual one.

*It is contended by appellants:* (a) "That the so-called tax authorized by chapter 100, Public Laws 1927, is a special assessment and limited to an amount not in substantial excess of the benefits accruing to the property taxed." (b) "Because it does not authorize the State Board

of Health to exclude from a sanitary district property which will not be benefited by the proposed improvements," therefore unconstitutional. Appellants cite *Browning v. Hooper,* 269 U. S., 369. The principle in that case is set forth as follows: Where a local improvement territory is selected and the burden is spread by the legislature or by a municipality to which the State has granted full legislative powers over the subject, the owners of the property in the district have no constitutional right to be heard on the question of benefits. Where a road improvement district is created by mere petition of taxpayers, and there was no legislative determination that any included property would be benefited by the improvement, notice to property owners and an opportunity to be heard are essential to the due process of law in the taxing of the assessment. We think the *Browning case* distinguishable from the present one.

In the *Browning case,* the Court said, at p. 402-3: "The evidence persuasively supports appellants' contention that the improvements of the roads designated will not benefit their property. Moreover, the inclusion of their land in the road district makes it impossible until the last bonds mature thirty years hence, to create another road district to raise money for the improvement of roads needed to serve the territory in which their lands are situated." The *Browning case* involves roads—the present act, as it says, is *"for the purpose of preserving and promoting the public health and welfare,"* and the State Board of Health, as provided in the chapter, may create sanitary districts. Then again, taking a reasonable construction of section 5, *supra,* upon the hearing before the State Board of Health, any landowner if not benefited could be heard, before the State Board of Health defined the boundaries and created the sanitary district. It is well settled that "no land can be taken without being benefited." See *Drainage District v. Cahoon,* 193 N. C., p. 326.

It has long been decided that water and sewer are "necessary expenses," within the meaning of section 7, Article VII, Constitution of North Carolina, and "a vote of the majority of the qualified voters" is not necessary. *Storm v. Wrightsville Beach,* 189 N. C., p. 679. So, also, are roads. See *Davis v. Lenoir, supra.* This question does not arise as, in the present case, there was a vote.

*In re Big Cold Water Drainage District,* 162 N. C., at p. 129, it was held: "The objectors filed two assignments of error to the charge. The first of these is abandoned here. The other, that the court instructed the jury to take into consideration the health of the community instead of confining them to the question of health in so far as it affected the lands within the drainage district, cannot be sustained, for the court charged that the jury should consider 'not only the increased facilities

of the land for producing crops, but the benefit to the health of the people who live in the district.' "

The benefit to the health of the people who live in the sanitary district can be taken into consideration. A road may not benefit certain property in a district. In the *Browning case,* it did not. It is a matter of common knowledge that odor from human excrement in a fairly thickly settled community will affect all around, the shifting wind makes it offensive in the entire district. The water and sewer eliminates this condition not only the annoyance, but the danger that comes from the fly feeding on filth and carrying the germ and thus pollute and poison food and drink. A water and sewer system eliminates the breeding places. It is a well known medical fact that filth breeds typhoid fever and the fly carries the germ. See *Storm v. Wrightsville Beach, supra.* The anopheles mosquito causes malaria, the stegomyia mosquito carries yellow fever and another spreads the Asiatic cholera. That fleas on rats communicate the dreaded bubonic plague. Hence, every protection in California was taken to prevent the rats from leaving incoming ships during the plague. Water, sewer, drainage and screening have been of untold value to the human family. Many parts of this country once almost uninhabitable have been reclaimed. The work in Cuba and the Panama Canal Zone are monuments to the skill of the physician, backed up by the authority of law. See *Snell v. Chatham,* 150 N. C., 729, 736; *Godfrey v. Power Co.,* 190 N. C., 24.

The statute provides also a hearing after notice to the landowners, both before the board or boards of county commissioners of the county or counties in which the land is situate and the State Board of Health. In the present action there was no complaint by any landowner at either hearing that his land would not be benefited by the formation of the sanitary district, and with full notice and knowledge, at the election the vote *was unanimous for the issuance of the bonds.*

Appellants contend the act is unconstitutional "because the statute requires the State Board of Health to include or exclude an industrial plant and its contiguous village, in accordance with the application of the owners of such plant and village." We do not see how this would affect the constitutionality of the act. If the industrial plant and its contiguous village is excluded on application, the sanitary district would be lessened of the burden. If it is included it helps bear the burden of the sanitary district. No doubt this provision was written in the act as it is a matter of common knowledge that many industrial plants and their contiguous villages already have water and sewer systems. If they did, they could be excluded, if they did not they could come in and help bear the burden and get the benefits. We think the levy authorized

by chapter 100, Public Laws 1927, is a general tax, as distinguished from a special assessment, and is, therefore, not limited by the amount of benefits conferred by the proposed improvements.

We think, in the present case, there is a difference from the *Browning case, supra,* involving roads or a transportation proposition. A sanitary matter, such as this, involves the very life and health of a community. The whole matter under the act is largely under control of the State Board of Health, an agency of the government, that has charge of the administration of the public health. 2 C. S., chap. 118; 3 C. S., chap. 118, "Public Health."

As stated, the act is carefully drawn for the purpose of promoting the public health and welfare—an important function of government. As said in *Reed v. Engineering Co., supra,* at p. 45: "We think the present act is one of great benefit to rural communities. With good roads in the State, many are moving from the crowded cities and towns to the country. Water and sewer is of great value to a home, and is a necessity. The expense is often more than the individual can afford, but a community or group, under the present law as applicable to Buncombe County, can all join in one sewer system and lessen the cost to the individual home owners. It is of vital importance to improve rural conditions and encourage, by every means possible, living conditions in the country. It was not the intention of the framers of the constitutional amendments and those who voted for them to prohibit such beneficent and constructive legislation applicable to an entire county."

The Buncombe County idea is extended by the present act, to the whole State. Pure water is the very life of a people. It is a matter of common knowledge that the use of Artesian wells has been of beneficial result in recent years to the health of the people in the eastern part of this State. See *Rouse v. Kinston,* 188 N. C., 1; 35 A. L. R., p. 1203.

Dr. Wm. J. Mayo, in an address before the American Chemical Society in St. Louis, said, in part: "Simultaneously with Vienna's introduction of a pure-water supply from the mountains, her per capita consumption of spirituous and fermented liquor was reduced spontaneously 40 per cent. The introduction of a pure-water supply in the various states in our country has been followed by a temperance movement, and finally by prohibition. The same influence is now apparent in Europe. In England pure water is to be had in the large cities, and a temperance movement promptly results, but in the villages without potable water, no such movement is as yet manifest." This is the view of a leading physician, before a great organization. It is worthy of consideration. The conscience of man to help his fellow-man no doubt will be considered primarily the motive power behind the temperance

movement, but it stands to reason that pure water is nature's natural beverage—life and health giving.

In *Rouse v. Kinston, supra* (at p. 23), it is said: "We find in Dalton's Human Physiology (7 ed.), p. 36: 'According to the best calculations, water constitutes in the human subject about 70 per cent of the entire bodily weight. . . . In accordance with the results formerly obtained by Barral—that, for a healthy adult man, the average quantity of water introduced into the system is about 2,000 grammes a day.' It is necessary to sustain human life. It is needful in agriculture and industry."

The General Assembly passed this act, no doubt with the coöperation of the State Board of Health, composed of physicians eminent in their profession, who have at heart the health of the people of the State. Courts do not lightly declare an act unconstitutional.

It is said in *Comrs. v. Assell,* 194 N. C., at p. 419: "It has been long settled that no court would declare a statute void unless the violation of the Constitution is so manifest as to leave no room for reasonable doubt. The philosophy of our system of government is based on the consent of the governed, subject to constitutional limitations."

The act seems to be economically sound. Section 17 of the act is as follows: "Upon the creation of a sanitary district and after each assessment for taxes thereafter the board or boards of county commissioners of the county or counties in which the sanitary district is located shall file with the sanitary district board the valuation of assessable property within the district. The sanitary district board shall then determine the amount of funds to be raised for the ensuing year in excess of the funds available for surplus operating revenues set aside as provided in section twenty of this act to provide payment of interest and the proportionate part of the principal of all outstanding bonds, and to retire all outstanding certificates of indebtedness. The sanitary district board shall determine the number of cents per $100 necessary to raise the said amount and so certify to the board or boards of county commissioners. The board or boards of county commissioners in their next annual levy shall include the number of cents per $100 so certified by the sanitary district board in the levy against all taxable property within the district, which tax shall be collected as other county taxes are collected and every ninety days the amount of tax so collected shall be remitted to the sanitary district board and deposited by said board in a bank in the State of North Carolina separately from other funds of the district. Said bank, however, before said funds are deposited in it is to execute a proper surety bond as described in section fifteen for the proper care and disbursement of and accounting for said taxes."

Section 20. "A sanitary district board shall immediately upon the placing into service of any of its works apply service charges and rates which shall, as nearly as practicable, be based upon the exact benefits derived. Such service charges and rates shall be sufficient to provide funds for the proper maintenance, adequate depreciation, and operation of the work of the district. Any surplus from operating revenues shall be set aside as a separate fund to be applied to the payment of interest on bonds, to the retirement of bonds or both. As the necessity arises the sanitary district board may modify and adjust such service charges and rates from time to time."

"The police power is that inherent and plenary power in the State over persons and property, when expressed in the legislative will, which enables the people to prohibit all things inimical to comfort, safety, health, and the welfare of society, and is sometimes spoken of as the law of overruling necessity." Illinois Law Review, June, 1928, at p. 186.

The act is sane, sound and sensible—well within the police power of the State to pass. Therefore we think that chapter 100, Public Laws 1927, is constitutional, and that the proposed bonds under said act are valid and binding obligations of the Druid Hills Sanitary District, and are payable from an *ad valorem* tax against all the taxable property within the boundaries of said district, and that the judgment of the court below should be

Affirmed.