GILBERT DEAL, CESAR PEYRONEL, L. O. DEAL, TROY CRAFT, RALPH
SIGMON, JEWIS SIGMON, J. S. SIGMON, H. E. ABERNETHY AND
WIFE, MRS. H. E. ABERNETHY, ON BEHALF OF THEMSELVES AND ALL
OTHER TAXPAYERS IN SO-CALLED ENON SANITARY DISTRICT, WHO MAY
WISH TO JOIN HEREIN, v. ENON SANITARY DISTRICT AND ROBERT L.
BAIRD, WILSON DEAL AND R. EDGAR WILLIAMS AS COMMISSIONERS
THEREOF; AND JOHN A. BLEYNAT, J. J. HALLYBURTON, ARTHUR H.
WHISNANT, BEN H. BRACKETT AND X. H. COX AS COUNTY COM-
MISSIONERS OF BURKE COUNTY; AND MRS. NADINE BAKER,
REGISTRAR, AND FRANK GRIFFIN AND SADIE BAIRD AS JUDGES OF
SPECIAL BOND ELECTION FOR SO-CALLED ENON SANITARY DISTRICT.

(Filed 28 November, 1956.)

**1. Appeal and Error § 50—**

Upon appeal from an order granting or refusing an interlocutory injunc-
tion, the Supreme Court may review the findings of fact as well as the
conclusions of law, and itself find the facts from the record evidence.

**2. Sanitary Districts § 1—**

The signature of 51% or more of the freeholders in the territory de-
scribed in a petition for the creation of a sanitary district is prerequisite
to the jurisdiction of the board of county commissioners to approve such
petition, and such petition thus approved is prerequisite to the jurisdiction
of the State Board of Health to define the boundaries of and create the
district. G.S. 130-36.

**3. Same—**

Where 51% of the freeholders within the boundaries described therein
sign a petition for the creation of a sanitary district, and the board of
county commissioners approve such petition, the State Board of Health has
jurisdiction, after hearing, to approve or disapprove the petition, and upon
its approval to create the district, but the State Board of Health has no
authority to exclude a portion of the territory described in the approved
petition and create as a sanitary district a territory substantially less in
area and in property values than the territory described in the petition.

**4. Same—**

The State Board of Health does not have authority to exclude from the
territory described in an approved petition for the creation of a sanitary
district, territory within the boundaries of the proposed district served
by a municipal water system, notwithstanding that such territory would
not benefit from the creation of the proposed district, since the authority
of the State Board of Health to create a sanitary district is limited by
statute to territory embraced within the boundaries described in an ap-
proved petition.

**5. Appeal and Error § 50: Injunctions § 8—**

Where on appeal it is determined that plaintiffs are entitled *pendente
lite* to the injunctive relief for which they have applied, the judgment
denying such relief will be vacated and the cause remanded with direction
that an interlocutory order be entered in accordance with law.

JOHNSON, J., not sitting.

HIGGINS, J., dissenting.

APPEAL by plaintiffs from *Huskins, J.,* as Presiding Judge of the Twenty-Fifth Judicial District, entered at 24 May, 1956, Term, of Caldwell, from BURKE.

Civil action commenced 17 May, 1956, in the Superior Court of Burke County, to declare Enon Sanitary District, purportedly created and established by the State Board of Health under G.S., Chapter 130, Article 6, nonexistent as a body politic and corporate, and *pendente lite,* to enjoin the holding on 26 May, 1956, of a special bond election on the proposed issuance by Enon Sanitary District of $91,000.00 of water bonds, or, if the holding of such election be not enjoined, to "restrain the certification of the results thereof and any and all acts which might be predicated on such certified results—including restraining of bond issuance if voted for favorably in the election . . ."

After hearing on 24 May, 1956, upon return of a notice to show cause, Huskins, J., denied plaintiffs' application for injunctive relief pending final determination of the cause.

The general factual background is set forth below. Other factual matters will be considered in the opinion.

Plaintiffs reside within the territory purportedly created and established as Enon Sanitary District by the State Board of Health. Seven of the plaintiffs are resident freeholders therein. Six of these resident freeholders signed the petition described below.

On 7 February, 1955, a petition was presented to the Board of Commissioners of Burke County for the establishment of the territory described therein as a sanitary district to be known as Enon Sanitary District. The territory described therein is in Burke County, west of and adjoining the corporate limits of Valdese. The object was to provide a water supply for the residents of the proposed sanitary district. The petition was signed by more than 51% of the freeholders residing in the territory described in the petition.

On 12 March, 1955, after a public hearing thereon, the petition was approved by the Board of Commissioners and transmitted to the State Board of Health.

On 4 May, 1955, the State Board of Health conducted a public hearing on said petition within the described territory, to wit, at Enon Baptist Church.

The foregoing proceedings, in respect of the publication of notice and otherwise, were in strict compliance with G.S. 130-34 and G.S. 130-35; and plaintiffs do not challenge the regularity of any of them. The description of the proposed sanitary district incorporated in the pub-

lished notices of said two public hearings was the description set forth in said petition.

On 12 January, 1956, the State Board of Health adopted a resolution which, in part, provided: ". . . that in the opinion of the State Board of Health of the State of North Carolina, the territory described in said petition *except for the area mentioned above now served by water facilities* should be created as a sanitary district, and it is for the best interests of the residents and inhabitants of the said district for the purpose of preserving and promoting the public health that the said sanitary district be created, and that same be and is hereby created and established as a sanitary district, all in accordance with and pursuant to provisions of Chapter 130, Article No. 6, General Statutes of North Carolina 1943 and 1951 Cumulative Supplements thereto." (Italics added.) The said resolution then defined the boundaries of Enon Sanitary District purportedly created and established thereby. These boundaries do not include a substantial part of the territory described in said petition.

Subsequent events, all with reference to Enon Sanitary District as purportedly created and established by the State Board of Health, include the following:

1. On 21 January, 1956, the Board of Commissioners, pursuant to the State Board of Health's said resolution of 12 January, 1956, elected the members of a District Board of Enon Sanitary District.

2. On 19 April, 1956, the said District Board adopted a resolution providing for submission to the qualified voters within the district of a proposal that $91,000.00 of water bonds be issued by Enon Sanitary District and that a tax sufficient to pay the principal of and the interest on said bonds when due be levied and collected annually on all taxable property within the Enon Sanitary District.

3. By order of the Board of Commissioners, a special bond election was called for Saturday, 26 May, 1956; and notice of such special election and of the new registration required therefor was published.

The court below made findings of fact on which he based his order. Plaintiffs excepted to designated findings of fact, excepted to the court's refusal to make findings of fact tendered by them, excepted to the order and appealed therefrom; and, on appeal, plaintiffs have brought forward their exceptions by appropriate assignments of error.

*C. David Swift for plaintiffs, appellants.*

*Byrd & Byrd for defendants, appellees.*

BOBBITT, J. Upon an appeal from an order granting or refusing an interlocutory injunction, the findings of fact, as well as the conclusions

of law, are reviewable by this Court. *Arey v. Lemons,* 232 N.C. 531, 61 S.E. 2d 596; *Cameron v. Highway Com.,* 188 N.C. 84, 123 S.E. 465.

The evidence fails to show any irregularity subsequent to the resolution adopted 12 January, 1956, by the State Board of Health, sufficient to entitle plaintiffs to injunctive relief; and plaintiffs' assignments of error, directed to the order and published notice relating to the special bond election, are overruled.

Decision on this appeal turns on whether Enon Sanitary District was legally created and established by the State Board of Health.

The petition signed by more than 51% of the resident freeholders was for the establishment of the territory described therein as a sanitary district. This petition was approved, after public hearing thereon, by the Board of Commissioners. Another public hearing thereon was conducted by the State Board of Health.

The determinative question is this: Did the State Board of Health in the absence of a petition therefor, signed by 51% or more of the resident freeholders therein and approved by the Board of Commissioners, have authority to create as a sanitary district a *portion* of the territory described in the approved petition, that is, a territory substantially less in area and in property valuations than the territory described in the approved petition?

The question posed was answered by the court below in favor of defendants in this conclusion of law: "1. That the Enon Sanitary District has been legally created as provided by law, and this Court is of the opinion that G.S. 130-36 gives to the State Board of Health the discretionary right to adopt a Resolution defining the boundaries of the sanitary district and declaring the territory within such boundary to be a sanitary district, regardless of whether the boundary of the area defined coincides with the boundary of the area described in the Petition requesting the creation of such district." Plaintiffs' assignment of error thereto squarely presents the crucial question.

When hereafter used, "original boundaries" refers to the territory described in said approved petition and "excluded territory" refers to the portion thereof not included in the sanitary district purportedly created by the State Board of Health.

As a basis for determining plaintiffs' right to injunctive relief, *pendente lite,* this Court, after careful consideration of the evidence presented, finds the facts to be as stated below.

1. The excluded territory adjoins the Town of Valdese.

2. The properties in the excluded territory, with minor exceptions, are presently connected with the Valdese water system.

3. Other properties within the original boundaries, but not in the excluded territory, are presently connected with the Valdese water system.

4. The Town of Valdese let it be known that it planned to extend its corporate limits so as to annex the excluded territory and that it would not furnish water to a sanitary district embracing the excluded territory.

5. The 1955 valuations of properties in the excluded territory exceeded $83,865.00 and approximated $\frac{1}{7}$ of the 1955 valuations of all properties within the original boundaries.

6. If the excluded territory is taken out of the original boundaries, this will reduce only by a $\frac{1}{92}$ part (less than $1,000.00) the expected cost of the Enon water system.

7. If the excluded territory is taken out of the original boundaries, the result will be a sanitary district in which *ad valorem* taxes necessary to provide the Enon water system will be heavier than in a sanitary district created and established in accordance with the original boundaries.

8. No petition has been signed, presented or approved, requesting that the State Board of Health create and establish as a sanitary district the territory described in its resolution of 12 January, 1956.

In *Idol v. Hanes*, 219 N.C. 723, 14 S.E. 2d 801, a petition signed by 51% or more of the resident freeholders within the proposed sanitary district, was filed with the Board of County Commissioners in accordance with G.S. 130-34. Prior to the advertised public hearing on the petition, certain of the signers thereof requested that their names be withdrawn; and, if their names were withdrawn, the remaining signers constituted less than 51% of the resident freeholders within the proposed district. Notwithstanding such requested withdrawals, the Board of County Commissioners approved the petition and prepared to forward such approval to the State Board of Health for further action toward establishment of the district.

After holding that a signer had the legal right to withdraw his name from the petition prior to action thereon by the Board of County Commissioners, this Court, speaking through *Seawell, J.,* said: "The withdrawal of these petitioners, conceded in the stipulation to reduce the number to less than 51% of the resident freeholders, was fatal to the jurisdiction of the defendant Board of County Commissioners, and the judgment of the Superior Court so holding must be affirmed. *Tarboro v. Forbes*, 185 N.C. 59, 116 S.E. 81; *Armstrong v. Beaman, supra; Charlotte v. Brown*, 165 N.C. 435, 81 S.E. 611; *Shelton v. White, supra;* McQuillin's Municipal Corp., 1921 Supp., sec. 1858." Upon this basis, the defendant Commissioners were permanently restrained from taking further action with reference to said petition.

The jurisdictional petition required by G.S. 130-34 must set forth the boundaries of the territory to be created and established as a sanitary district. The request of the resident freeholders who sign the petition is that *the territory described therein* be created and estab-

lished as a sanitary district. The Board of Commissioners, after a public hearing on said petition, determines whether it approves the creation and establishment of *the territory described therein* as a sanitary district as requested by 51% or more of the freeholders resident therein.

If a petition signed by 51% or more of the freeholders residing in the territory described in said petition is prerequisite to the jurisdiction of the Board of Commissioners, as held in *Idol v. Hanes, supra,* said petition, approved by the Board of Commissioners, is prerequisite to the jurisdiction of the State Board of Health.

G.S. 130-36, in part, provides: "If, after such hearing the State Board of Health shall deem it advisable to comply with the request of said petition and that *a district* for the purpose or purposes therein stated should be created and established, the State Board of Health shall adopt a resolution to that effect, *defining the boundaries of such district* and declaring the territory within such boundaries to be *a sanitary district; . . .*" (Italics added.)

Relying upon the italicized words, defendants contend that the State Board of Health was authorized, in its discretion, to create and establish as a sanitary district a territory different from that described in said approved jurisdictional petition, that is, the territory remaining after the "excluded territory" is taken out of the "original boundaries." We are constrained to hold otherwise.

Our attention is directed to the fact that G.S. 130-34 and G.S. 130-35 refer to the "boundaries of the proposed sanitary district," "the proposed sanitary district," and "this sanitary district," while G.S. 130-36 refers to "a district" and "such district" and "a sanitary district." In this connection, it must be observed that no sanitary district exists unless legally created and established by the State Board of Health. We construe G.S. 130-36 to mean that the State Board of Health is to determine whether *it deems it advisable to comply with the request of said approved jurisdictional petition;* and, if so, it is authorized to create and establish *a sanitary district in compliance therewith.*

The approved petition, upon which the jurisdiction of the State Board of Health rests, requests that *the territory described therein,* be created and established as a sanitary district. Necessarily, as required by G.S. 130-36, the resolution of the State Board of Health must define the boundaries of any sanitary district created and established by it. To define, according to Webster, is "to determine with precision or to exhibit clearly the boundaries of." Here the State Board of Health did more than make precise and clear the boundaries of the territory described in said petition. The territory purportedly created and established as a sanitary district by the State Board of Health differs materially and substantially from that described in said petition. There

is a marked distinction between defining with precision and exhibiting clearly the territory created and established as a sanitary district and the purported creation and establishment as a sanitary district of an area substantially and materially different from that described in the approved jurisdictional petition.

In this connection, it is noted that G.S. 130-36 contains a proviso, namely, ". . . any industrial plant and its contiguous village shall be included within or excluded from the area embraced within such sanitary district as expressed in the application of the person, persons or corporation owning or controlling such industrial plant and its contiguous village, said application to be filed with the State Board of Health on or before the date of the public hearing as hereinbefore provided." All parties are charged with statutory notice that this may be done. Suffice to say, the proviso is not relevant here except as an aid to interpretation.

Defendants contend further that the State Board of Health was authorized to exclude from the proposed district properties now connected with, and using water from, the Valdese water system, on the ground that such properties would not benefit from the creation of the proposed district, citing *Sanitary District v. Prudden,* 195 N.C. 722, 143 S.E. 530. An analysis of the cited case seems appropriate.

*Sanitary District v. Prudden, supra,* was determined upon the submission of a controversy without action under C.S. 626, now G.S. 1-250. The plaintiff, Druid Hills Sanitary District, was created pursuant to the provisions of Ch. 100, Public Laws of 1927, which as amended is now G.S., Ch. 130, Art. 6. All proceedings were in full compliance with the statutory provisions, including the election authorizing the issuance of district bonds payable from an unlimited *ad valorem* tax upon all taxable property in said district and not from special assessments. Prudden, *et al.,* the defendants, refused to comply with their contract to purchase the bonds.

The defendants contended that Ch. 100, Public Laws of 1927, was in conflict with sec. 17, Art. I, the Constitution of North Carolina, and the Fourteenth Amendment to the Constitution of the United States. They based this contention, *inter alia,* on these grounds: (a) "That the so-called tax authorized by chapter 100, Public Laws 1927, is a special assessment and limited to an amount not in substantial excess of the benefits accruing to the property taxed." (b) "Because it does not authorize the State Board of Health to exclude from a sanitary district property which will not be benefited by the proposed improvements."

This Court, in upholding the constitutionality of Ch. 100, Public Laws of 1927, rejected the contention that a special assessment district was involved. The basis of decision was that the health and welfare of all the people who lived in the sanitary district was the prime con-

sideration for the establishment thereof, not benefits, if any, to individual property owners as such.  Upon this basis, this Court held that in such a sanitary district the tax to be levied is a general tax for a special purpose as distinguished from a special assessment and therefore is not limited by the amount of benefits conferred by the proposed improvement in respect of particular property.  See: *Williamson v. Snow,* 239 N.C. 493, 80 S.E. 2d 262.

In the course of a discussion of the defendants' said contentions, the opinion states: "Then again, taking a reasonable construction of section 5, *supra* (G.S. 130-36), upon the hearing before the State Board of Health, any landowner if not benefited could be heard, before the State Board of Health defined the boundaries and created the sanitary district.  It is well settled that 'no land can be taken without being benefited.'  See *Drainage District v. Cahoon,* 193 N.C. p. 326."  Defendants stress this excerpt from the opinion.

While the quoted excerpt, standing alone, lends some support to defendants' contention, it must be regarded as *dicta;* for the quotation from *Drainage District v. Cahoon,* 193 N.C. 326, 137 S.E. 185, shows plainly that the proposition stated relates to a special assessment district whereas the decision in *Sanitary District v. Prudden, supra,* was predicated squarely on the proposition that the Druid Hills Sanitary District was not a special assessment district.

The required public hearing (G.S. 130-35) contemplates that every interested person has a right to be heard by the State Board of Health before it determines whether it deems it advisable to create and establish a sanitary district in compliance with the request of the approved jurisdictional petition.

Assuming that, after the Town of Valdese had made known its aforesaid attitude, informal request was made that the territory defined in said resolution of 12 January, 1956, be created and established as a sanitary district, and that these developments were generally known to residents of the Enon Community, we are confronted by the fact that the State Board of Health had no authority except that conferred by the approved jurisdictional petition.

The intention of the General Assembly is clear.  51% or more of the resident freeholders may petition for the establishment of a specific territory as a sanitary district.  The Board of Commissioners and the State Board of Health may approve or reject their petition.  It is not contemplated that, upon consideration of said petition, a different territory, for which no jurisdictional petition has been presented, may be created and established.

If, as defendants contend, 51% or more of the resident freeholders within the boundaries set forth in the resolution of the State Board of Health favor the establishment *of that territory* as a sanitary district

they may sign and present their petition to the Board of Commissioners and otherwise proceed in accordance with G.S., Ch. 130, Art. 6. In such case, the further delay and additional expense are regrettable; but we are mindful that the law as declared by this Court is applicable to all proceedings for the establishment of sanitary districts under G.S., Ch. 130, Art. 6. Uncertainty as to the statutory authority vested in the State Board of Health by G.S. 130-36 may have contributed in large measure to the already considerable delay in these proceedings.

It is noted that the jurisdictional petition must be signed by 51% or more of the resident freeholders; but, if and when a sanitary district has been legally created and established, the qualified voters, whether freeholders or not, determine what bonds, if any, shall be issued by the district.

Upon the facts disclosed by this record, plaintiffs herein were entitled *pendente lite* to the injunctive relief for which they applied; and the failure to grant an interlocutory injunction was error. Therefore, the judgment of the court below is vacated and the cause remanded with direction that an interlocutory order be entered consistent with the law as declared herein.

Judgment vacated and cause remanded.

JOHNSON, J., not sitting.

HIGGINS, J., dissenting: I am unable to agree with the majority opinion in this case. A fair interpretation of G.S. 130-35 and G.S. 130-36 gives the State Board of Health authority to exclude in its discretion part of the territory embraced in the original petition filed with and approved by the Board of Commissioners, provided the district as approved has the support of 51 per cent of the resident freeholders. One of the purposes of the hearing to be held by the Board of Health is to determine whether the district as approved has the required support. G.S. 130-36 provides (not *the* district but) *a* district shall be created and established, and that the State Board of Health shall adopt a resolution to that effect *defining the boundaries of such district and declaring the territory within such boundaries to be a sanitary district.*

G.S. 130-35 provides the State Board of Health shall give notice, naming a time and place within the proposed district, and shall hold a public hearing concerning the creation of the proposed district. By requiring the Board of Health to conduct a hearing, to fix boundaries, and by order to set up the district, the Legislature had in mind the Board should have authority to do more than simply say, "yes," or "no," to the proposals submitted in the petition. I do not see in the acts referred to a legislative plan thus to place the Board of Health in a straight jacket. I vote to affirm.