(No. 21028.—)

J. H. CROCHER *et al.* Appellants, *vs.* HARRY ABEL, Appellee.

*Opinion filed April 23, 1932.*

Samuel W. King, for appellants.

Oscar R. Laraway, (Robert E. Higgins, of counsel,) for appellee.

Mr. Justice Jones delivered the opinion of the court:

On December 20, 1930, a petition for the annexation of certain territory to the city of Joliet was filed in the county court of Will county. A hearing was had and the court found that there were 532 property owners owning property within the boundaries of the territory described in the petition and 607 legal voters residing in such territory; that the signers of such petition constituted a majority of the property owners and of the legal voters residing therein; that the petition was in all respects sufficient and valid, and that the territory is contiguous to the city of Joliet and not included within the limits of any city, village or incorporated town. An order was entered directing the question of annexation be certified to the city council of the city of Joliet for final action thereon. Upon the petition of J. H. Crocher and other property owners the cause was taken from the county court to the circuit court of Will county by *certiorari*. On a hearing of the cause the circuit court quashed the writ of *certiorari* and dismissed the petition. An appeal is now prosecuted.

The statute provides that the order of the county court on the question of the legal sufficiency of an annexation petition shall be final and conclusive. (Smith's Stat. 1931, chap. 24, par. 369.) It is urged that this statute is invalid because it denies the right of appeal and writ of error. Appeals, unless allowed by statute, are never a matter of right. The denial of the right to appeal or sue out a writ of error in a statutory proceeding cannot affect the validity of the statute. *People* v. *Cohen,* 219 Ill. 200; *Lingle* v. *City of Chicago,* 210 id. 600; *City of Pekin* v. *Wetzel,* 246 id. 493; *City of Chicago* v. *Cohn,* 326 id. 372.

This proceeding was instituted under the act of 1927 (Laws of 1927, p. 214,) which deals with territorial annexation to and exclusion from cities, towns and villages. It is claimed that this act is an attempted amendment of section 1*a* of an act on the same subject as amended in 1921, and violates section 13 of article 4 of the constitution, which provides that no law shall be revived or amended by reference to its title, only, but the law revived or the section amended shall be inserted at length in the new act. The act of 1927 amended section 1 of the previous act and repealed sections 4, 5, 6, 7 and 8 thereof. It did not by express provision or by implication repeal or amend section 1*a* of the old act. Amended section 1 is inserted at length in the new act and the repealed sections are specifically enumerated. It was not necessary to reiterate in the new law or to insert at length the sections of the old law which remained in full force and effect. The constitutional provision has not been construed to mean that when a new act is passed the entire body of all prior acts in any way modified by the new act shall be published at length in the amendatory act. Only the section or sections amended need be inserted at length. The purpose of the constitutional provision is to avoid confusion arising from patchwork legislation and not to require a practically endless reiteration of amended statutes. (*Bishop* v. *Chicago Railways Co.* 303 Ill. 273; *People* v. *Crossley,* 261 id. 78; *Holmgren* v. *City of Moline,* 269 id. 248.) The constitutional mandate has not been violated by this legislative enactment.

Section 1 of the act on annexation, as amended, provides that the petitioners shall give at least fifteen days' notice of the hearing on the petition and that the notice shall be published in a newspaper and posted in five of the most public places in the territory desired to be annexed. The notice in this case was published but once, and it is insisted that one publication, although made in apt time, was insufficient because the act on notices (Smith's Stat. 1931,

chap. 100, sec. 3,) provides that whenever notice is required by law or order of court and the number of publications is not specified it is intended that the same be published for three successive weeks. This law does not apply when the language of a special statute requiring the publication of notice clearly indicates a different number of publications. In *Central Illinois Public Service Co.* v. *City of Taylorville,* 307 Ill. 311, the statute required the publication of the notice "for at least twenty days prior to such election," and it was held that the publication of one notice at least twenty days prior to the election was a sufficient compliance with the law. In *People* v. *Weinberg,* 327 Ill. 158, the statutory requirement was for the publication of a notice "at least twenty days prior to such meeting." It was urged that the number of publications was not specified by the act and therefore publication should have been made for three successive weeks. This court said that the language of the act did not admit of such a construction, and that like questions had been before us on other occasions and it had been held uniformly that language similar to that used in the act under consideration requires but a single publication. To the same effect are *Stone* v. *City of Chicago,* 207 Ill. 492, *Aldis* v. *South Park Comrs.* 171 id. 424, and *Weld* v. *Rees,* 48 id. 428. The publication of one notice in this behalf was in compliance with the statute.

The county court during the December, 1930, term, set the time for a hearing on the petition for January 12, 1931, but later, during the same term and more than fifteen days prior to the hearing, amended the order and fixed the hearing for January 15. The court had full power to alter, change or amend its orders at any time during the term at which they were entered. *Krieger* v. *Krieger,* 221 Ill. 479; *Brelsford* v. *Community High School District,* 328 id. 27.

It is conceded that the annexation petition was signed by a majority of the legal voters, but appellants insist that

it was not signed by a majority of the property owners and is therefore void. One ground for this claim is, that prior to the conclusion of the hearing on the annexation petition forty-four signers filed written withdrawals of their signatures. On the second day of the hearing twenty-four of said forty-four signers filed their written counter-withdrawals and asked that their names stand as originally signed to the petition. The county court ruled that the counter-withdrawals were properly filed and that the signatures should be counted as originally signed to the petition. The signers had the right to withdraw their names from the petition at any time before final action thereon. (*Littell* v. *Board of Supervisors,* 198 Ill. 205.) That rule is a necessary inference from the very nature of the right of petition and applies not merely to the petitions themselves but to withdrawals. Courts are not justified in placing any restriction upon the free action of a citizen not placed there by law and not required by good morals or propriety. We observe no reason why the signer of a petition who withdraws his signature may not change his mind a second time if he thinks he is better advised or informed about the subject. Up to the time of final action thereon he should have control of the matter as to whether or not his signature shall remain on the petition. The action of the court in counting such twenty-four signatures was proper. *State* v. *Furnish,* 48 Mont. 28; *State* v. *Geib,* 66 Minn. 266; *Hoffman* v. *Nelson,* 1 Neb. 215.

A highway runs through a part of the territory described in the annexation petition, and the court refused to count the highway commissioner of the township of Joliet as a property owner. If he was such an owner then the number of property owners would be increased to 533. But even in that case, and without his signature if the court was otherwise correct in its count, the petition was signed by a majority of the property owners in the territory.

The First National Bank of Joliet was trustee of certain property in said territory owned by the estate of Robert Pilcher, deceased. The bank's signature on the petition was, "First National Bank, Joliet, Ill., Trustee, by Harry W. Osman, Trust Officer." A trustee of this character is the proper one to sign the petition, (*People* v. *Village of Lombard,* 319 Ill. 56,) and whether or not Osman was authorized to sign for it will be discussed later.

The court did not err in refusing to strike the signature, "Lyons Bros. Lbr. & Fuel Co., by Thomas Lyons, 602 Washington St.," on the ground that the corporate name was abbreviated. The signature is sufficiently descriptive of the signer's identity, and it is not contended that Lyons did not have authority to sign the name of his company.

The record title to the property of the Church of God, a religious corporation, is in five persons as trustees of the church and their successors in office. Appellee claims only one ownership is involved while appellants claim five are involved. Although the property is in the name of the trustees of the corporation and their successors in office, the ownership is no different than if the church were named as grantee by its corporate name. Where churches and religious societies are incorporated, the real and personal property held by trustees for the benefit of the congregation is deemed to be vested in the corporation the same as if it had been conveyed to the corporation by deed. (Cahill's Stat. 1931, chap. 32, par. 171.) If conveyances are made solely for the benefit of the congregation and trustees are named as the grantees, the right to the possession, control and use of the property is vested solely in the congregation. (*Glader* v. *Schwinge,* 336 Ill. 551.) The trustees were trustees of an incorporated church, and conveyances made to them are governed by rules of law and an express statute applicable to them. The property owned by the First Spirit Society of Joliet, another religious corporation, was held

in a like manner. The court was correct in counting one ownership for each of the two corporations.

The extent to which the circuit court may review the proceedings of the county court in a case of this kind is limited. The common law writ of *certiorari* brings up for review only the record of the tribunal to which it is addressed, and not the evidence. An exception to this rule is made when the question involved is whether jurisdictional facts were or were not proved. (*Hahnemann Hospital* v. *Industrial Board,* 282 Ill. 316; *Carroll* v. *Houston,* 341 id. 531; *Hamilton* v. *Town of Harwood,* 113 id. 154; 4 Ency. of Pl. & Pr. 262; 11 Corpus Juris, 205; 5 R. C. L. 265.) The cause must be tried on the record, only, but the record must show findings of fact sufficient to give to inferior tribunals jurisdiction of the subject matter and the parties. If there is no evidence to support the findings the court has no jurisdiction to decide the issue. In this case the county court found that there were 532 property owners within the territory, of whom 269, or a majority of three, had signed the petition. Evidence *dehors* the record, and contradicting it, is not permitted in the absence of statutory authority. Where evidence is permitted to be reviewed by the superior court in ascertaining the existence of jurisdictional facts, it may be examined not for the purpose of determining the credibility of witnesses or the weight to be given conflicting testimony but solely for the purpose of learning whether there is any competent evidence to fairly sustain the decree. (5 R. C. L. "Certiorari," 265.) If this were not so, then the limitations which have always been placed upon the purposes for which a proceeding by *certiorari* can be maintained would be removed and it could be employed with the same effect as an appeal or writ of error. There is evidence in this record to support the finding as to the number of property owners within the territory and as to the number who signed the petition. The record sufficiently shows the jurisdictional facts and the finding is conclusive.

Within a comparatively short time before the petition was signed eight property owners caused their respective properties to be transferred to themselves and their spouses as joint tenants. It is claimed that such conveyances were made for the sole purpose of enabling the proponents of annexation to obtain the necessary number of signatures to the petition and that the spouses are not *bona fide* property owners and should not be counted among the petitioners. The *bona fides* of the transactions was a question of fact, which is not reviewable on *certiorari*. So, also, is the question of the authority of the trustees and attorneys in fact to affix signatures of property owners to the petition.

The circuit court correctly quashed the writ and dismissed the petition for *certiorari*, and its order is affirmed.

*Order affirmed.*