P. C. IDOL, H. C. MARTIN, T. A. CREWS, J. DEWEY LEWIS AND G. W. MATTHEWS, ON BEHALF OF THEMSELVES AND ALL OTHER PERSONS OF THE VILLAGE OF WALKERTOWN WHO DESIRE TO JOIN WITH THEM IN THIS ACTION, v. J. G. HANES, T. E. JOHNSON AND D. C. SPEAS, COMMISSIONERS OF FORSYTH COUNTY, AND C. L. STRAUGHAN, I. W. STRAUGHAN, D. G. WARNER AND C. STAPLES WAGGONER, INTERVENING DEFENDANTS.

(Filed 31 May, 1941.)

**Sanitary Districts § 1—**

> Signers of a petition for the creation of a sanitary district under the provisions of ch. 100, Public Laws 1927 (Michie's Code, 7077 [a], *et seq.*), are entitled as a matter of right to withdraw their names from the petition at any time before action is taken on the petition by the county commissioners on the question of approval, and when their withdrawal reduces the number of signers to less than 51% of the resident freeholders within the proposed district the board of county commissioners is without jurisdiction and its approval of the petition may be enjoined.

APPEAL by defendants from *Pless, J.,* at November Term, 1940, of FORSYTH. Affirmed.

This was a proceeding brought by certain petitioners before the Board of Commissioners of Forsyth County to secure their approval to the creation of a sanitary district under the provisions of chapter 100, Public Laws of 1927 (Michie's Code, Art. 4A, sections 7077 [a], *et seq.*), and to have further proceedings thereupon looking to the establishment of the district. The Act, as it relates to the powers and duties of the Board of County Commissioners, provides:

"7077 (c). Petition from freeholders.—Fifty-one per cent or more of the resident freeholders within the proposed district may petition the board of county commissioners of the county in which all or the major portion of the proposed district is located setting forth the boundaries of the proposed sanitary district and the objects it is proposed to accomplish. Upon receipt of such petition the board of county commissioners if the same is approved by them, shall, through its chairman, transmit the petition to the State Board of Health requesting that the proposed sanitary district be created. Provided, however, that the board of county commissioners before passing upon said petition shall hold a public hearing upon the same and shall give prior notice of such hearing by advertising to be made by posting a notice at the court-house door of their county and also by publication in a newspaper published in said county at least once a week for four successive weeks; and in the event such hearing is to be before a joint meeting of the boards of county commissioners of more than one county, or in the event the land to be affected

lies in more than one county, then in either of such events a like publication of notice shall be made and given in each of said counties."

The petition, containing the required 51% of the resident freeholders, was filed with the Board of Commissioners and advertisement was made in accordance with the law. But before any action toward approval was taken by the Commissioners, and before the hearing was had, a number of signers signified their desire to withdraw as petitioners and have their names stricken from the petition.

It is stipulated in the case on appeal:

"9. That the original petition was signed by 51%, or more, of the resident freeholders of the proposed Sanitary District when it was filed with the Board of County Commissioners of Forsyth County on July 1, 1940.

"10. That if the persons who requested that their names be withdrawn from the petition, as hereinbefore set out, had the right to withdraw and could not be counted as signers by the defendant County Commissioners at their meeting on September 3, 1940, then the petition did not contain 51% of the resident freeholders of the proposed sanitary district."

The Board of Commissioners, at an adjourned hearing, proceeded to approve the petition, notwithstanding the requested withdrawals, and prepared to forward such approval to the State Board of Health for further action toward establishment of the district, under the provisions of the law. Certain of the petitioners who had signified their withdrawal objected, and, their protests proving unavailing, proceeded to bring this suit to enjoin the defendant Commissioners from any further action in the proceeding, and obtained a temporary restraining order. At the hearing before Judge Pless, at November Term, 1940, of Forsyth Superior Court, the order was made permanent and defendants, including those who in the meantime were permitted to intervene, appealed to this Court.

*Fred S. Hutchins and H. Bryce Parker for intervening defendants, appellants.*

*Elledge & Wells for plaintiffs, appellees.*

SEAWELL, J. The questions presented for our decision are: Whether the petitioners had the right to withdraw their names before action by the Board of Commissioners on the question of approval, and whether such withdrawal abated the authority of the Commissioners to act in the premises. We answer both of these questions in the affirmative.

Since the general type of procedure set up in the statute under review is common all over the United States, as applied to various kinds of improvement, from schools to drainage and to elections upon a multitude

of subjects, counsel for both sides, ranging a fertile field, have been able
to present to us a great number of decisions, *pro* and *con,* on the subject.
We do not have altogether a free choice in the matter, since the question
has been practically settled, in principle at least, in analogous cases.
*Shelton v. White,* 163 N. C., 90, 79 S. E., 427; *Armstrong v. Beaman,*
181 N. C., 11, 105 S. E., 879. If we had, we believe it would be our
duty to adopt the more reasonable view and the one which seems to be
more consistent with the genius of our people, which, exercised upon
more than one occasion, has resolved itself into a policy which recognizes
the liberty of individual action where no hurt may follow to the persons
immediately concerned, or to the public at large.

It is supposed that second thoughts are apt to be sounder, and this
conviction has led courts to consider the right of withdrawal favorably,
both as a matter of justice to the individual, who is entitled to apply
his best judgment to the matter in hand, and as sound policy in com-
munity and public affairs, where the establishment of governmental insti-
tutions should rest upon mature consideration rather than be mere un-
necessary excrescences upon the body politic, raised by the whim and
fancy of a few men.

The facility with which signatures may be obtained to petitions is
proverbial, and in other instances the amount and character of the per-
suasion is unknown. "What good reason is there why one who has
changed his mind since signing such a petition, and who concludes that
either the public good or his own interest is not in harmony with the
petition, may not recede from his signature before action taken thereon?
The rule which permits a withdrawal at any time before final action
upon the petition is much more likely to get at the real and mature judg-
ment of the voters, and it is calculated to discourage a hasty presentation
of a petition for signatures without a full disclosure of the real merits
of the question. Circulators of the petition can usually avoid sufficient
withdrawals to defeat the petition by taking care that the matter is fully
understood by those to whom it is presented for signature." *County Ct.
v. Pogue,* 115 Ill. App., 391 (affirmed in *Kinsloe v. Pogue,* 72 N. E.,
906).

A *locus poenitentiae* is usually afforded in most matters where it can
be indulged without injury to another's right. And in considering the
effect of the withdrawal upon other petitions we must remember that the
defeat of an aspiration is not the destruction of a right.

The plaintiff in an action may, as a matter of right, take a nonsuit if
his opponent has not asked for affirmative relief, and some courts, with
reason we think, have applied the analogy to cases of this sort: *In re
Central Drainage District Cush, et al., v. Kruschke, et al.,* 113 N. W.,
675; *St. Lawrence Independent School District v. Board of Education,*

IDOL v. HANES.

235 N. W., 697; *Roslyn v. Board of Education,* 173 N. W., 461; *Webster v. Bridgewater,* 63 N. H., 296. It would be remarkable if we attached more importance to a petition than to the summons and complaint in a civil action.

The signer of a petition has made no commitment to his co-petitioners or to the administrative body. In this respect it has been held that his action in signing the petition is analogous to an offer which stands open until accepted: 44 C. J., 239, citing *Hay v. Cincinnati,* 9 OhNP; *Andrew v. Auditor,* 5 OhNP, 123; *White v. Buffalo,* 61 Barb. (N. Y.), 415; *Wilkinson v. Lincoln* (Neb.), 181 N. W., 161; *Waco v. Chamberlain* (Tex.), 45 S. W., 191.

Furthermore, while the petitioners address the board in behalf of a public enterprise, the individual petitioner is dealing with a prospective burden upon his own pocketbook, or a lien upon his property—a very substantial right—and his privilege to withdraw before injury to others should be judged of in that relation.

There is, of course, some significance respecting the extent of public interest implied in the statute by the requirement of 51% of the resident freeholders, but this is not by any means an election upon the proposal as determining the rights of the parties *inter sese,* or as fixing its status before the board. The election is one of the individual and remains so until action is taken. Viewed as a guaranty of the worth-whileness of instigating the project, the statute might as well have required the signature of only 25% of the resident freeholders—a percentage rather frequently employed in the calling of local elections. If the petition is considered as conveying a minimum expression of public interest such as would justify further action by the authorities—in the nature of an assurance to the law—then, unless it be regarded as a mere device for the entrapment of Lady Progress, that assurance should carry through until the law has taken stock of the demand.

From considerations of public policy and individual right, we think the better rule is that the individual petitioner may, as of right, withdraw his name from the petition at any time before final action thereupon, and this rule we affirm. It should satisfy any reasonable requirement as to constancy of purpose, to be expected of those who deal with the courts and administrative bodies.

The withdrawal of these petitioners, conceded in the stipulation to reduce the number to less than 51% of the resident freeholders, was fatal to the jurisdiction of the defendant Board of County Commissioners, and the judgment of the Superior Court so holding must be affirmed. *Tarboro v. Forbes,* 185 N. C., 59, 116 S. E., 81; *Armstrong v. Beaman, supra; Charlotte v. Brown,* 165 N. C., 435, 81 S. E., 611; *Shelton v. White, supra;* McQuillin's Municipal Corp., 1921 Supp., sec. 1858.

Affirmed.