243 P.2d 766

**STATE ex rel. DE CONCINI, Atty. Gen. v.
CITY OF PHOENIX et al.**

No. 5256.

Supreme Court of Arizona.

May 5, 1952.

27, 1948, the Phoenix City Council unanimously passed an ordinance (number 47 32) by the terms of which certain territory was purportedly annexed to and made a part of the city.

Later one Joseph P. Price, a real property owner within the affected area, presented his verified complaint objecting to the adoption of this ordinance to the then attorney general, Evo De Concini. Pursuant thereto, the attorney general on behalf of the state of Arizona duly filed this action in quo warranto to test the validity of the city council's action. Judgment was rendered in the trial court in favor of the city and the state properly perfected its appeal from that judgment.

The pertinent facts may be stated as follows: The area which the city sought to annex is an irregularly shaped tract of contiguous land which completely surrounds the Phoenix Country Club. That portion of the country club containing the club house and other buildings, as well as a small strip of the golf course on the north facing Osborn Road, is included in the area sought to be annexed. The greater part of the golf course, however, was not included in the ordinance and was not sought to be taken into the city.

Fred O. Wilson, Atty. Gen. of Arizona, Wilmot W. Trew, Phoenix, of counsel, for appellant.

Jack Choisser, City Atty., Laurence H. Whitlow and Jack D. H. Hays, Asst. City Attys., all of Phoenix, for appellees.

UDALL, Chief Justice.

This appeal involves the validity of certain annexation proceedings. On January

The annexation ordinance was first considered by the city council at a special meeting called for that purpose on January 26, 1948. Petitions for annexation containing the signatures of property owners within the area were presented to the council

at that meeting. The appellant concedes that the signatures on these petitions were legally sufficient, representing a total assessed valuation, as of the last preceding assessment, of $498,549 which was more than the required percentage. Petitions representing an additional valuation of $12,050 were alleged to have been secured, but were apparently lost as they were not presented to the council.

The ordinance was twice read, discussion was had, and the matter was then continued until the following morning for the third and final reading.

On the evening of January 26th a protest meeting was held at the home of one of the opponents to annexation, whereat seven persons, who owned property in the area involved of a total assessed valuation of $36,205, signed notices requesting withdrawal of their signatures from the petitions for annexation. The next morning at nine o'clock these notices of withdrawal were handed to the city clerk. One hour later the council reconvened and the ordinance was immediately read for the third time. The notices of withdrawal were then called to the attention of the city council and the minutes of that meeting reveal that:

"Planning Director Mocine (was) asked if he had checked the percentage of property signed for after elimination of the above-described lots, (i.e., the lots covered by the withdrawals), replied that he had, and that the peti-

tions still carried 51.1 percent of the signatures of property owners in the district affected."

Whereupon the motion to adopt the ordinance was carried unanimously, and the Mayor declared it adopted. However, the planning director was in error as it is now conceded that the withdrawals, if allowed, would reduce the total to slightly less than the required fifty per cent.

The sole statutory authority governing annexation proceedings in this state is section 16-701, A.C.A. 1939, which reads:

"Annexation by petition of property-owners.—Any city may extend and increase its corporate limits in the manner following: On presentation of a petition in writing, signed by the owners of not less than one-half in value of the property in any territory contiguous to the city, as shown by the last assessment of said property, and not embraced within its limits, the common council of said city may, by ordinance, annex such territory to said city, upon filing and recording a copy of such ordinance, with an accurate map of the territory annexed, certified by the mayor of said city, in the office of the county recorder, in the county where the annexed territory is situated."

By its principal assignment of error the state asserts that the trial court erred in refusing to permit the valuations represented by these withdrawals to be de-

ducted. Its proposition of law in support of this contention is:

"A person having previously signed a Petition for Annexation may withdraw his or her signature at any time until passage of the annexation ordinance by the municipal corporation is completed."

On the other hand the appellee City of Phoenix contends that the signer of a petition for annexation may not withdraw his signature after the petition has been filed with the city clerk.

This raises a question that has not previously been decided by this court. That the signer may withdraw his name from the petition prior to its filing is clear, In re Mosher, 25 Ariz. 297, 216 P. 242. It is equally clear that he has no right to withdraw his name after the petition has been finally acted upon and the ordinance adopted; Valley Center S.D. No. 20 v. Hansberger, 28 Ariz. 493, 237 P. 957. As to the twilight zone between, the authorities are not in accord.

The question of the right of a signer to withdraw his name from a petition required by law is wisely governed by constitutional or statutory provisions in many jurisdictions. Our constitution is silent on the subject and unfortunately the legislature, as yet, has not seen fit to prescribe the time at, or the circumstances under which a name may be withdrawn. In the instant case we are therefore compelled to answer this troublesome question of policy by choosing what we consider on logic and common sense to be the better course to pursue.

Undoubtedly the greater number of cases dealing with this matter have laid down the rule that in the absence of constitutional or legislative provisions to the contrary, signers of petitions have an absolute right to withdraw therefrom at any time before final action has been taken thereon. State ex rel. O'Connell v. Mitchell, 111 Mont. 94, 106 P.2d 180; Idol v. Hanes, 219 N.C. 723, 14 S.E.2d 801; Crocher v. Abel, 348 Ill. 269, 180 N.E. 852. At the other extreme there is a line of cases which hold that once the petition has been regularly filed with the proper officer the right to withdraw has terminated. Rogers v. Board of Directors of City of Pasadena, 218 Cal. 221, 22 P.2d 509; State ex rel. Matzdorf v. Scott, 52 Nev. 216, 285 P. 511, rehearing denied 52 Nev. 232, 286 P. 119; Bordwell v. Dills, 70 Ark. 175, 66 S.W. 646. See, 126 A.L.R. 1031, for a complete and exhaustive annotation on the different rules as to the rights of signers of petitions to withdraw therefrom, from which it is manifest there is a complete lack of harmony in the decided cases.

In Barbe v. City of Lake Charles, 216 La. 871, 45 So.2d 62, the signers of a petition for annexation attempted, as here, to withdraw their names after the ordinance had been considered on both the first and second readings. The Louisiana statute provided

for notice of the filing of the petition and anyone desiring to be heard would be given such an opportunity if they notified, in writing, the secretary of the municipality. This statute was followed and at the hearing both sides were heard on the matter. The appellate court held that after all these steps had been taken, with their attendant delays, jurisdiction had attached and the time to withdraw had expired prior to the first reading of the ordinance in the absence of any showing that their signatures were obtained fraudulently or in bad faith.

 We hold that once affirmative legislative action has commenced upon a petition for annexation, jurisdiction attaches and the petitioners cannot withdraw so as to divest the city council of jurisdiction to act in its legislative capacity. By affirmative action we are not implying that any action is sufficient, but it must be such as to put the legislative wheels in motion and looking toward the actual passage of the annexation ordinance. The mere checking of the petitions to ascertain if the statutory requirements have been fulfilled or even the filing of them with the clerk are merely preliminary ministerial steps and not the affirmative action we have referred to.

We believe this middle ground between the two extremes is one that is fair and reasonable and until the legislature declares otherwise will best meet the situation fairly. It preserves the rights of the petitioners by giving them additional time, after signing, in which to reflect upon the matter and give expression to their second thoughts, but at the same time it affords some measure of stability to voluntary petitions and protects the legislative processes of city governments.

The appellant contends that the right to petition implies the right to withdraw. As an abstract principle of law we agree with this statement but believe that this right is not absolute under all conditions and circumstances. There must be a point beyond which private rights must give way to the interests of society in having a stable and smooth-functioning government. To permit the individual petitioner to withdraw his name at the last minute would allow him to play fast and loose with the orderly processes of city government and might involve additional expense as well as interminable delay.

 In the instant case when the city council had regularly convened to consider the annexation ordinance and to vote upon it, the wheels of legislative action were set in motion and jurisdiction had attached so that the time for withdrawing of signatures had expired.

 Appellant contends that the signatures of widows and veterans, who are the owners of property within the affected area, must be stricken from the petitions for annexation because their property may be tax exempt—either in whole or in part—under the constitution and statutes of Arizona.

This question was fully considered by this court in the case of City of Phoenix v. State of Arizona, 60 Ariz. 369, 137 P.2d 783, 146 A.L.R. 1255, wherein it was held that such persons did, under the wording of section 16–701, supra, have the right to sign petitions for annexation. We are of the opinion that this is a sound rule and should be followed as there has been no change in the law and no cogent reason is now advanced by appellant for departing from our previous holding. Primarily this is a question of public policy to be determined by the legislature and if a change is desired it should be sought from that body and not from this court.

■ Another point urged by appellant is that under the annexation statute heretofore quoted, a person, to be entitled to sign an annexation petition, must either (a) be the owner of real property in the proposed area *at the time the annexation ordinance is adopted,* or (b) have been the record owner upon the tax rolls of the property involved *at the time of the last assessment prior to annexation.* It is recognized that these positions are inconsistent, i. e., it is not contended that both propositions are correct, but depending upon the interpretation placed upon this statute one must be sustained and the other denied. We believe that this reasoning is fallacious and that no such choice is indicated. We hold that when the statute said "property owners" were to sign it meant just that; hence the proper test is, was the signer an "owner" of property within the area at the time the petition was signed? Furthermore, consent once given is not ipso facto withdrawn by reason of transfer of ownership. To require the city at its peril to keep an up-to-the-minute record of the title status of the property in the area would place an intolerable burden upon the governing body and such an interpretation might well defeat the very purpose of the annexation statute.

■ The appellant contends that the city council in drafting the annexation ordinance in such a manner as to exclude the 93.83 acres comprising the golf course owned by the Phoenix Country Club had given to it a special grant or privilege not accorded to other signers of the petition. Not having acquired jurisdiction over the golf course, we are at a loss to understand how the municipality can be justly accused of having granted any special privilege to the owners of the area. Conceding that the proponents of the annexation may have tacitly agreed with the Country Club that the golf course would be excluded from the area to be annexed, that in itself would not vitiate the petitions. In the matter of annexation, under the circumstances as presented here the question of including or excluding any given area is discretionary with the governing body. Furthermore, the motives of the governing body may not be inquired into. We quote from 62 C.J.S., Municipal Corporations, § 44, p. 130:

"Where annexation is otherwise proper, valid, and effective, the courts are not concerned with the motives of

the governing body of a city in undertaking the annexation, nor is the private motive or intention of a participating official material."

See also, City of Houston v. State, 142 Tex. 190, 176 S.W.2d 928, appeal dismissed 322 U.S. 711, 64 S.Ct. 1159, 88 L.Ed. 1554

It would unduly extend this opinion to treat the remaining assignments of error; suffice it to say that we have considered all of them and find either that they have been answered adversely to appellant's contention by previous decisions of this court or that they are without merit.

Judgment affirmed.

STANFORD, PHELPS, and LA PRADE, JJ., concurring.

Justice DE CONCINI having announced his disqualification, Honorable ROBERT S. TULLAR, one of the Judges of the Superior Court of Pima County, was called to sit in his stead.

TULLAR, Superior Judge (dissenting).

Deferentially, I dissent.

I believe that signators to this kind of petition should be permitted to withdraw therefrom at any time prior to the taking of final action by the body to which the petition is addressed. It is conceded in the majority opinion that the greater number of cases hold to this rule, and the reasons in support thereof appeal to me.

The signing of a petition is a free and voluntary act performed by the signer for any one of many reasons. He may have signed capriciously, impulsively, hastily, unthinkingly, ignorantly, mistakenly; his motive may have been good nature or malice; he may have signed because of coercion, undue influence or hope of reward. The person seeking his signature is like a salesman; to secure the signature he must overcome "sales resistance". The good "salesman" soon returns his filled petitions. The facilitiy with which signatures may be obtained to petitions is proverbial. Idol v. Hanes, 219 N.C. 723, 14 S.E.2d 801.

Second thought is apt to be more deliberate. A withdrawal of a signature is less likely to be secured so easily. Before the signer will change his mind and revoke his former act, it will be natural for him to consider, consult, examine and reflect. Knowledge of this trait has led most courts to consider the right of withdrawal favorably, both as a matter of justice to the individual signer, who should have full opportunity to apply his best judgment to the matter, and also as sound public policy.

In Crocher v. Abel, 348 Ill. 269, 180 N.E. 852, 855, the court said:

"The signers had the right to withdraw their names from the petition at any time before final action thereon. Littell v. Board of Supervisors, 198 Ill. 205, 65 N.E. 78. That rule is a necessary inference from the very nature of the right of petition and applies, not

merely to the petitions themselves, but to withdrawals. Courts are not justified in placing any restriction upon the free action of a citizen not placed there by law and not required by good morals or propriety."

No contractual relation is involved; there is no consideration for the signature. One signature is not a consideration for another in a petition of this kind. The petition contains no promise. County Court of De-Kalb County v. Pogue, 115 Ill.App. 391, affirmed in Kinsloe v. Pogue, 213 Ill. 302, 72 N.E. 906.

The signer makes commitment to no one by the mere act of signing. In this respect his action has been likened to an offer which stands open until accepted. Idol v. Hanes, supra.

The analogy to a civil action has also frequently been made. If, in a civil action, the defendant has not sought affirmative relief (or, under our rules, has not served a responsive pleading), the plaintiff may, as a matter of right, dismiss his action without prejudice. "It would be remarkable", says the court in Idol v. Hanes, supra, "if we attached more importance to a petition than to the summons and complaint in a civil action." [219 N.C. 723, 14 S.E.2d 803.]

The holding of the majority that withdrawals will not be permitted after affirmative legislative action has commenced would appear more reasonable to me in this case

if the procedural steps for the filing, handling, and acting upon the petitions were defined. But there is no time specified for the filing. For all the statute dictates, petitions might be brought in singly, and at any time up to and including the last moment before the ordinance is voted upon. But the right to petition implies the right to withdraw. In re Mosher, 25 Ariz. 297, 216 P. 242. If a last minute petition be permitted, then the right to a last minute withdrawal should equally be allowed.

The cases restricting the right to withdraw invariably deal with situations where there is express statutory requirement for the filing of the petitions; for the giving of notice of hearings thereon; for the judicial determination by the administrative body concerned of the sufficiency of the petitions; and for the giving of reasonable opportunity to withdraw. None of this exists here.

The majority opinion suggests that the problem is a jurisdictional one; that withdrawals should not be permitted after the wheels are set in motion and jurisdiction has attached. Nothing in law or logic, I believe, ties the question of the right to withdraw to the question of when jurisdiction attaches. See Town of Blooming Grove v. City of Madison, 253 Wis. 215, 33 N.W.2d 312, and the dissenting opinion of Chief Justice Fournet in Barbe v. City of Lake Charles, 216 La. 871, 45 So.2d 62.

In my opinion, the judgment of the trial court should have been reversed.