In the Matter of the Annexation of Blocks 30 through 37, Mountain View Suburb Addition No. 2, Natrona County, Wyoming, to the Town of Mills, Wyoming.

W. R. "Sam" MILLER, Burk Austin, Billy E. Baker, Howard Keyser, Gerald Henthorn, and Ken Grigg, Appellants (Plaintiffs below),

v.

TOWN OF MILLS, Wyoming, Appellee (Defendant below).

No. 4969.

Supreme Court of Wyoming.

Feb. 7, 1979.

Leonard E. Lang, Casper, for appellants.

Dennis M. Hand, of Hand, Hand & Hand, P. C., Casper, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.**

ROSE, Justice.

This appeal comes to this court from a summary judgment which climaxed a district court dispute originating with an effort by various landowners to bring about the annexation to the Town of Mills of eight blocks in the Mountain View Suburb Addition No. 2, Natrona County, Wyoming. We will affirm the summary judgment.

The appellants-landowners urge that the Town's governing body was arbitrary and capricious and abused its discretion in passing the annexing ordinance and, therefore, that the ordinance should be declared void. See § 15.1–62, W.S.1957, C.1965 [§ 15–1–509, W.S.1977]. One of the statutes with which compliance is required is § 15.1–56, W.S.1957, C.1965 [§ 15–1–503, W.S.1977].[1]

Appellants *first* charge that the landowners' petition, dated February 9, 1977, failed to meet the minimum-compliance requirement provided for in subparagraph (e) of § 15.1–56, in that the directives outlined in subparagraphs (a), (c) and (d) were not

obeyed. This being so, it is argued, it was improper for the governing body to proceed to hold the public hearing under § 15.1–58, W.S.1957, C.1965 [§ 15–1–505, W.S.1977], and to pass the annexation ordinance under § 15.1–59, W.S.1957, C.1965 [§ 15–1–506, W.S.1977].

*Secondly,* appellants contend that the Town's governing body acted in an arbitrary and capricious way when it considered a petition which did not inform those affected that the property was to be annexed without the Town's assumption of the debts created by outstanding water and sewer bonds, and that the landowners have not properly agreed to the nonassumption of the aforesaid debts by the Town, all contrary to, and as provided for by, § 41–479.52 through § 41–479.57, W.S.1957, 1975 Cum. Supp. [§§ 41–10–152 through 41–10–157, W.S.1977].

### Minimum Compliance

In approaching the issue having to do with whether or not the landowners' petition sufficiently complies with statutory directives, we are required—as was the

---

** At the time of oral argument, Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been retained in active judicial service pursuant to Article 5, Section 5, Wyoming Constitution, and Section 5–1–106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

1. Section 15.1–56, W.S.1957, C.1965 [§ 15–1–503, W.S.1977], provides:

    "Initiation of proceedings—By landowners' petition.—The proceedings for annexation of eligible territory may be initiated by a written petition filed with the clerk of the city or town to which it is proposed to annex territory provided the following conditions and procedures are complied with:

    "(a) The petition shall be signed and dated by the landowners of a majority of the area sought to be annexed, excluding public streets and alleys, and tax exempt property. The landowners shall also comprise a majority in number of all landowners in the area.

    "(b) The petition shall contain the following information:

    "(1) a legal description of the area sought to be annexed;

    "(2) a request that the described territory be annexed;

    "(3) a statement that each signer is an owner of land and a description of his land within the area proposed to be annexed; and

    "(4) a map of the area.

    "(c) No signature on the petition is valid if it is dated more than one hundred eighty (180) days prior to the date of filing the petition for annexation with the clerk. No person signing a petition for annexation may withdraw his signature from the petition after it has been filed with the clerk.

    "(d) The clerk shall refer the petition to the governing body which shall then, without undue delay, take appropriate steps to determine if the petition is substantially in compliance with this article.

    "(e) If the petition is in minimum compliance, the city council shall adopt a resolution to that effect and the procedure outlined in sections 15.1–58 and 15.1–59, shall then be followed. If it is not in minimum compliance the petitioner shall be notified that no further action will be taken on the petition until compliance is made"

Town Council—to test its efficacy against a "minimum-compliance" standard (§ 15.1–56(e)), supra. The legislature has not said the petition must be perfect—it has said the petition need only comply with the statutory requirements *minimally*. This means that before we can declare the ordinance of annexation void, we would have to find the landowners' petition to be so irregular and defective that—pitted against a standard of minimum compliance—the Town Council's exercise of its discretion amounted to arbitrary and capricious action. In this context, it becomes necessary to attribute a meaning to the word "minimum" before deciding whether the landowners' petition meets the statutory mandate. In *Board of Education of City of Rockford v. Page*, 33 Ill.2d 372, 211 N.E.2d 361, 363 (1965), the court said:

> "the word 'minimum' is commonly defined as 'the least quantity assignable, admissible, or possible in a given case—opposed to *maximum*.' Webster's Third New International Dictionary; *Ruda v. Industrial Board*, 283 Ill. 550, 554, 119 N.E. 579."

With this understanding of the minimum-compliance directive, we undertake the decision-making here, fully aware that the petition may be imperfect, while, at the same time, accepting the fact that the statute makes room for imperfect annexation petitions. The question for us, then, is whether or not the petition was *fatally* defective for the reason that it was not in "minimum compliance" with the requirements of the statute.

## POINT I

### The Landowners' Initiating Petition

*Dating.* Appellants assert a failure to comply with § 15.1–56(a), supra, in that the petition was not properly dated. Each page of the petition is dated and there is no showing that the dates are either incorrect or the method of dating faulty. There is no citation of authority to guide us, and, for that matter, we are not even certain from reading the briefs that the appellants are, in fact, complaining of the manner in which the dating was accomplished. In any event, we find the dating requirement to have been complied with.

■ *Legal Descriptions* : It is argued that § 15.1–56(b)(1), supra, was not complied with since a "legal description of the area sought to be annexed" was not contained in the petition dated January 27, 1977. The record shows that each petitioner described his or her property by lot and block, but the petition did not contain a proper "legal" description of the entire area. A map defining the area to be annexed was, however, attached to the petition. Was this sufficient to meet the minimum-compliance test? We think so.

■ The description in the petition should be sufficient to ascertain the territory sought to be annexed. McQuillin, Municipal Corporations (3rd Ed.), 1966 Revised Volume 2, § 7.31, p. 432. In *McAlmond v. City of Bremerton*, 60 Wash.2d 383, 374 P.2d 181 (1962), where the surveyor could identify and survey the area contemplated for annexation by looking at a map accompanying the petition, this satisfied the description requirement. The description was adequate in *People v. City of Park Ridge*, 86 Ill.App.2d 82, 230 N.E.2d 289 (1967), where the petition and attached map, when viewed together, fairly apprised the public of the property involved. For further authority, see McQuillin, supra, § 7.31, with notes, pp. 432–433, and 1978 Cumulative Supplement.

When these rules of law are viewed against a mimimum-compliance requirement and remembered in the context of the purpose of the legal-description statute, which is to identify, for the landowners, other residents who might be affected, and the Town officials, the area sought to be annexed, we think the description was sufficient for all purposes contemplated by the statute.

### Signing and Withdrawing Signatures:

Appellants seem to want to make the point that, because the petition was originally signed by a majority of the landown-

ers owning a majority of the area sought to be annexed, and, subsequently, a portion of such area was excluded by the Town from the proceedings, this had the effect of violating subparagraph (a) of the petitioning-statute, supra.

■ A reading of the statute in question points unerringly to the conclusion that the Wyoming legislature has contemplated that the sufficiency of the petition's signatures is to be tested when it is signed and filed with the appropriate official and not some other and later time. The general rule in this regard is:

". . . The sufficiency of the signatures to a petition is to be measured as of an appropriate date, conformable to statutory directions. . . ." McQuillin, Municipal Corporations (3rd Ed.), 1966 Revised Volume 2, § 7.33, p. 448, citing *In re Annexation by Borough of Carnegie, Etc.*, 408 Pa. 146, 182 A.2d 527; *Village of Brown Deer v. Milwaukee*, 16 Wis.2d 206, 114 N.W.2d 493; *Town of Blooming Grove v. Madison*, 9 Wis.2d 443, 101 N.W.2d 809; *Schulte v. Flick*, 89 Ohio App. 252, 101 N.E.2d 301; *State v. City of Phoenix*, 74 Ariz. 46, 243 P.2d 766 (1952); *People ex rel. Cherry Val. F. P. D. v. City of Rockford*, 120 Ill.App.2d 275, 256 N.E.2d 653; *Township of Midland v. Michigan State Boundary Commission*, 64 Mich.App. 700, 236 N.W.2d 551, reversed on other grounds, 401 Mich. 641, 259 N.W.2d 326.

In interpreting statutes such as ours, where the sufficiency of the signatures is tested when the petition is filed, it may be said that the reason for the provision against withdrawing names is that jurisdiction vests when the petition is filed, *State v. City of Phoenix, supra*. The logic of the proposition is expressed by McQuillin, supra, pp. 449–450, where the author says:

"Although persons signing a petition have been permitted to withdraw their names, sometimes as a matter of right, within a limited time after signing, the right to withdraw their names has been denied, particularly after a hearing on the petition, or when the withdrawal would deprive the body with which the petition was filed of jurisdiction. . . ."

Our statute prevents the withdrawal of petitioners' names as if to underscore the proposition that to allow such procedures would be to threaten the jurisdiction which is acquired by the Town when the petition is filed. It is as though the statute were to say that once the petition is filed, jurisdiction having vested, the withdrawal of names becomes an effort in futility—at least insofar as affecting the integrity of the petition is concerned.

It is appropriate to notice that no cases have been cited to this court, nor can we find any, where the Town's withdrawal of land from the area contemplated by the petition has had the effect of destroying the signature-sufficiency of an originally adequate petition. Furthermore, we would not expect to discover such a holding—particularly in jurisdictions where, through statute, the legislature has said that signatures may not be withdrawn, thereby expressing a clear intention that jurisdiction will attach when the petition is filed. So, here, jurisdiction vested in the Town when the petition was filed, and neither the Town's deletion of land nor the constructive withdrawal of petitioners' names could affect the integrity of the petition for purposes of determining the Town's jurisdiction to act thereon.

POINT II

*The Water and Sewer District Statutes*

■ Section 41–479.52, supra, provides that areas within water and sewer districts may be annexed if, under § 41–479.57, supra, a majority of the landowners owning more than one-half of the land sought to be annexed approve the annexation and the nonassumption of the debt by the municipality.

This is a summary-judgment proceeding. The record shows that the petition was filed by landowners owning a majority of the property sought to be annexed. The record further reveals that, prior to annexation,

these people were informed by the Town Attorney's letter that the area to be annexed was within the water and sewer district, that the Town did not intend to assume the district's debts, and the properties within the boundaries of the area to be annexed would continue to be served by the district instead of the Town. There was a clear invitation in this letter for those who were not agreeable to the Town's refusal to assume the bonded indebtedness to object—and none did.

There is no counteraffidavit or evidence of any kind indicating that less than a majority of the landowners in the annexed area approved the Town's nonassumption of the water and sewer district's debts. Absent acceptable summary-judgment evidence to the contrary, the record is sufficient to support a summary judgment in favor of the appellee on this point.

We agree with the statement contained in appellee's brief where it is said:

"Appellee, having come forward with these specific relevant and material facts in support of its Motion for Summary Judgment cast upon appellants the burden of coming forward as required by Rule 56(e), Wyoming Rules of Civil Procedure with specific facts showing that a majority of the landowners owning a majority of the land in the annexed area did not wish to be annexed or did not approve the nonassumption of indebtedness of the Brooks Water and Sewer District by the Town

" 'If the movant (for Summary Judgment) makes out a prima facie case that would entitle him to a directed verdict if uncontroverted at trial, Summary Judgment will be granted unless the party opposing the motion offers some competent evidence that could be presented at trial showing that there is

a genuine issue as to a material fact.' Wright and Miller, Federal Practice and Procedure, Section 2727, pp. 536–537 (1973), cited in *Wood v. Trenchard*, 550 P.2d 490 (Wyo.1976)."

We think the letter informing the landowners that the Town would not assume the water and sewer debts—together with the receipt of no objections to this disclaimer of debt obligation—at least made a prima facie case which called for such opposing evidence as would structure a fact question or, in the alternative a citation of law to the effect that the prima facie case was not made. The appellants do not refer us to evidence, nor do they cite law which would contradict the prima-facie-case arguments made by the appellee in this summary-judgment proceedings. In lieu of citing authorities for the proposition that the procedure employed by the Town was not in compliance with the statute and thus fatally deficient, the appellants' brief says:

"This procedure seems to be so fundamentally defective to this writer as not to require citing legal authority to the Court for the proposition. . . ."

This is a risky way to brief a case for appellate consideration in this court. We would have, indeed, welcomed authority to controvert the prima-facie-case theory of appellee if, in fact, there is any. We are not required to notice claimed error unsupported by authority. *Stolldorf v. Stolldorf*, Wyo., 384 P.2d 969; and Wyoming Digest, Appeal and Error, ⬅761.

Affirmed.