SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| JOHN L. POWERS, an individual and qualified elector, | ) ) ) | Supreme Court No. CV-02-0227-AP/EL |
| Plaintiff/Appellant, | ) ) | Maricopa County Superior Court |
| v. | ) ) ) | Nos. CV 2002-012155 and CV 2002-012301 |
| JOHN M. CARPENTER, an individual, SALOMON LEIJA, an individual, STEPHEN VEGA, an individual, Real Party in Interest, THE HONORABLE R. FULTON BROCK, DON STAPLEY, ANDREW KUNASEK, MAX W. WILSON, MARY ROSE WILCOX, THE DULY ELECTED OR APPOINTED MEMBERS OF THE MARICOPA COUNTY BOARD OF SUPERVISORS, WHO ARE NAMED SOLELY IN THEIR OFFICIAL CAPACITY; THE MARICOPA COUNTY BOARD OF SUPERVISORS; THE HONORABLE HELEN PURCELL, THE DULY ELECTED MARICOPA COUNTY RECORDER, WHO IS NAMED SOLELY IN HER OFFICIAL CAPACITY, AND THE HONORABLE KAREN OSBORNE, THE DULY APPOINTED MARICOPA COUNTY DIRECTOR OF ELECTIONS, WHO IS SOLELY NAMED IN HER OFFICIAL CAPACITY; THE HONORABLE BETSEY BAYLESS,THE DULY ELECTED ARIZONA SECRETARY OF STATE, WHO IS NAMED SOLELY IN HER OFFICIAL CAPACITY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **O P I N I O N** |
| Defendants/Appellees. | ) ) ) ) | |

Appeal from the Superior Court of Maricopa County
Nos. CV 2002-012155 and CV 2002-012301

The Honorable Paul A. Katz, Judge
**REVERSED IN PART, AFFIRMED IN PART**

Williams and Associates                                    Scottsdale
      by   Scott E. Williams
           and
Law Offices of Robert E. Melton
      by   Robert E. Melton                                Scottsdale
Attorneys for Appellant


Bassi and Hill                                               Phoenix
      by   Steven Hill
           and
Richard M. Romley, Maricopa County Attorney
      by   Jill M. Kennedy, Deputy County Attorney          Phoenix
Attorneys for Appellees

**J O N E S, Chief Justice**

## INTRODUCTION

¶1      We issued a dispositive order July 15, 2002 indicating affirmance in part, reversal in part, and an instruction that appellee John Carpenter's name not be placed on the primary election ballot.  We also indicated that this formal opinion would follow.

¶2      Review was granted in order to consider whether the trial court erred in establishing June 12, 2002[1] as the deadline for individual electors to withdraw signatures from nominating petitions.  Today, we affirm the principle that persons who sign nominating petitions in support of candidates for public office

---

[1] Unless otherwise indicated, all dates referenced in the text of this opinion occurred during 2002.

have a common law right to withdraw their own signatures. While the right is not absolute, it nevertheless exists and may be exercised under limited conditions. In the instant case, the trial judge erred in establishing June 12 as the withdrawal deadline. We reverse that part of the lower court's decision.

¶3 We affirm the trial judge's finding that Carpenter's prior removal from office as justice of the peace did not render him ineligible as a candidate for the office of constable.

¶4 We exercise jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 16-351(A) (Supp. 2001).

**FACTS**

¶5 Appellant John Powers and appellee John Carpenter are candidates for the office of constable, East Phoenix #1 precinct, Maricopa County, Arizona. Carpenter is a former justice of the peace for the East Phoenix #1 precinct.

¶6 June 12 was the statutory deadline for filing nominating petitions with county election officials. *See* A.R.S. § 16-311 (Supp. 2001). On that date, Carpenter filed petitions containing 355 elector signatures. After the filing deadline, 71 individuals who had signed Carpenter's petitions submitted requests that their signatures be withdrawn. Pursuant to A.R.S. section 16-351, Powers filed this action against Carpenter in the superior court on June 26, asserting that because of the withdrawn signatures, Carpenter

-3-

¶7     was no longer eligible to have his name appear on the primary ballot.  At trial, the parties stipulated that if the 71 withdrawals were permitted, Carpenter would not have enough signatures of registered voters to qualify for the primary election ballot.

¶8     Relying upon A.R.S. section 1-261, the trial court ruled that Carpenter was eligible to have his name appear on the ballot because the signatures were withdrawn too late.  According to the trial court, for a withdrawal to be valid, a signer must have submitted his withdrawal request on or before 5:00 p.m., June 12.  Since the withdrawals occurred after that date, the court ordered that the signatures be counted in support of the petition.  Powers appealed.

**ANALYSIS**

¶9     The specific question we address is whether an elector may withdraw a signature from a nominating petition after expiration of the petition filing deadline.  This issue is one of first impression in Arizona.  There is neither a constitutional nor statutory provision governing this particular situation.

¶10     To determine whether the withdrawals were timely submitted, the trial court interpreted A.R.S. section 1-261(A) to include the withdrawal of signatures from nominating petitions. Statutory construction is a question of law, which we review *de novo*. *Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230

(1996).  In interpreting statutes, we look to the plain language as the most reliable indicator of meaning.  *State v. Williams,* 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993).

¶**11**       Section 1-261(A) reads in part:

> A person who has signed a petition prescribed by statute for any initiative, referendum or formation or modification of a county, municipality or district may withdraw his signature from the petition not later than 5:00 p.m. on the date set by law for filing of the petition . . . .

Nominating petitions of individual candidates are not included within the language of the statute. The statute is expressly applicable to initiative measures, referenda, and measures dealing with the formation or modification of political subdivisions of the state.  Normally, where items, as here, are expressly listed in series in a statute, we presume the legislature intended to exclude items of the same class that are not listed.  *See Pima County v. Heinfeld,* 134 Ariz. 133, 134, 654 P.2d 281, 282 (1982) ("A well established rule of statutory construction provides that the expression of one or more items of a class indicates an intent to exclude all items of the same class which are not expressed.") (citations omitted).  The "class" of items in the instant case would include petitions filed pursuant to the election statutes of this State.

¶**12**       On its face, the language of section 1-261 does not encompass the withdrawal of signatures from nominating petitions. If intended, the legislature could easily have included such

petitions, but did not.  Moreover, nothing in its language or, as far as we can ascertain, its legislative history, suggests any intent that it apply to nominating petitions.

¶13    Because the trial court erred in applying section 1-261 and because no statute addresses the right to withdraw a signature from a nominating petition, we look to the common law.  A.R.S. § 1-201 (Supp. 2001).  Absent contrary statutory provisions, the right to sign a petition is a personal privilege, and the right to withdraw a signature from a petition can be exercised only by the person directly concerned.  *State ex rel. Hindley v. Superior Court,* 126 P. 920, 923 (Wash. 1912).  A signer may withdraw his signature, but must do so before the petition has been acted upon and adopted. *Valley Center Sch. Dist. No. 20 v. Hansberger*, 28 Ariz. 493, 496, 237 P. 257, 268 (1925).  Thus, the common law rule is that the right to sign implies the right to withdraw, but the right is not absolute.

¶14    Consistent with these principles, this court previously determined that the signer of a municipal annexation petition has the right to withdraw his or her signature any time prior to the commencement of formal legislative action on the petition.  *State ex rel. De Concini v. City of Phoenix*, 74 Ariz. 46, 243 P.2d 766 (1952).  In *De Concini,* signers of a petition seeking to annex land within the City of Phoenix made a request for signature withdrawal after the petitions had been filed, but also after the city council

had begun formal consideration of the matter. We held that once affirmative legislative action had commenced, signatures could not be withdrawn, stating, in effect, that affirmative legislative action is not encompassed in the mere act of filing a petition but is encompassed in action that puts the "legislative wheels in motion." *Id*. at 50, 243 P.2d at 768. Actual formal consideration by the Phoenix City Council was held to constitute legislative action. We contrasted such active consideration with ministerial action, such as "[t]he mere checking of the petitions to ascertain if the statutory requirements have been fulfilled or even the filing of them with the clerk." *Id.*

¶15 As a cautionary note, *De Concini* teaches that the right to withdraw is neither indefinite nor absolute; rather, at some point private rights must yield to society's interest in having a well ordered and functioning government. The court pointed out that to permit a signer to withdraw a signature after formal action had begun in the annexation process would "allow him to play fast and loose with the orderly processes of city government and might involve additional expense as well as interminable delay." *Id*. at 50, 243 P.2d at 769.

¶16 In *De Concini*, we held that the names could not be withdrawn because formal legislative action had commenced the moment the council convened to consider the ordinance. *Id*. Although *De Concini* addresses annexation petitions, the common law principle it announces is clearly applicable to nominating

-7-

petitions. Section 16-351(A) sets forth the procedure for challenging the nomination of candidates for public office.[2] That statute gives an elector ten business days after the petition filing deadline to challenge the validity of signatures on nomination petitions. For the current election year, that deadline was June 26.

¶17 On the record before us, we hold that the expiration of the ten-day challenge period constitutes an event which causes official action to commence on nominating petitions.[3] Once the ten days have run, there can be no more challenges, and election officials are permitted either to take official action placing the candidate's name on the ballot or determine that there are

---

[2] A.R.S. § 16-351(A) provides:
Any elector filing any court action challenging the nomination of a candidate as provided for in this chapter shall do so within ten days, excluding Saturday, Sunday and other legal holidays, after the last day for filing nomination papers and petitions. The elector shall specify in the action the petition number, line number and basis for the challenge for each signature being challenged. Failure to specify this information shall result in the dismissal of the court action. Within ten days after the filing of the action, the superior court shall hear and render a decision on the matter. Such decision shall be appealable only to the supreme court, and notice of appeal shall be filed within five days after the decision of the superior court in the action. The supreme court shall hear and render a decision on the appeal promptly.

[3] The separate question, whether other events that may occur during the ten-day challenge period might operate to bar subsequent withdrawal of signatures, need not be addressed in the instant case because all 71 withdrawal requests were submitted prior to the June 26 filing of this suit.

insufficient valid elector signatures to justify doing so.

¶18     Just as affirmative legislative action began in *De Concini* the moment the city council began active consideration of the annexation petition, the formal legal event in the instant case occurred when the ten-day challenge period was complete, *i.e.*, at the close of business, June 26.  The 71 withdrawal requests were made prior to that time and were thus valid.

¶19     The court below recognized the right of a signer to withdraw a signature but took the absolutist position that the right expired the moment the June 12 petition filing deadline occurred.  *De Concini* gives us the more flexible and reasonable rule that a withdrawal can be made only if it occurs before formal action is taken.

¶20     The *De Concini* rule makes sense because if, during the ten-business-day challenge period, it becomes known that a candidate, for whatever reason, is unfit for public office, there must be at least a reasonable opportunity for petition signers to exercise their established right of withdrawal.  Extending that time until the challenge period expires provides at least a modicum of opportunity after the petitions are filed.  Accordingly, we resort to the *De Concini* principle which allows withdrawal during the time in which election officials conduct only ministerial duties, but as yet have no authority to place a candidate's name on the ballot.

**DISPOSITION**

¶21     For the foregoing reasons, we hold the trial court erred in establishing June 12 as the final date on which withdrawal requests could be submitted.  Because the withdrawal requests were submitted prior to expiration of the ten-day challenge period, they are valid.  We therefore hold appellee Carpenter ineligible to appear on the ballot by reason of the loss of 71 withdrawn signatures.  The County Elections Director is instructed to omit Carpenter's name from the election ballot.

¶22     We hold further that appellee's prior removal from the office of justice of the peace is an incident unrelated to his candidacy for constable.  We affirm the trial court's determination that such removal did not affect Carpenter's eligibility as a candidate in this proceeding.  The separate issue whether a constable is a judicial or an executive officer, though discussed by the parties, is not germane to the disposition of the case. Accordingly, we need not reach it.

 

_____

Charles E. Jones

CONCURRING:                       Chief Justice

_____

Ruth V. McGregor, Vice Chief Justice

_____

Stanley G. Feldman, Justice

_____

Michael D. Ryan, Justice

NOTE: Justice Rebecca White Berch did not participate in the disposition of this matter.